# United States Court of Appeals
## For the First Circuit

---

No. 13-2518

INDUSTRIA Y DISTRIBUCTION DE ALIMENTOS; ASOCIACION DE
INDUSTRIALES DE PUERTO RICO; CAMARA DE COMERCIO DE PUERTO RICO;
ASOCIACION DE NAVIEROS DE PUERTO RICO; NORTON LILLY
INTERNATIONAL; ISLAND STEVEDORING, INC.; PUERTO RICO SUPPLIES
GROUP; TO-RICOS, LTD.; PLAZA PROVISION CO.; HORIZON LINES OF
PUERTO RICO, INC.; CROWLEY PUERTO RICO SERVICES, INC.; SEA STAR
LINES, INC.; V. SUAREZ & CO., INC; CAMARA DE MERCADEO; LUIS A.
AYALA COLON SUCRES,

Plaintiffs, Appellants,

v.

TRAILER BRIDGE; FLEXITANK, INC., a/k/a Flexitank; PEREZ Y CIA DE
PUERTO RICO, INC.; HARBOR BUNKERING CORPORATION; PLAZA LOIZA;
COLOSO FOODS, INC.; SUPERMERCADOS SELECTOS, INC.; B. FERNANDEZ &
HERMANOS, INC.; PAN PEPIN INC.; SUPERMERCADOS CENTRO AHORROS,
CORP.; TRAFON GROUP, INC.; PONCE CARIBBEAN DISTRIBUTORS, INC.;
KRAFT FOODS, LLC; MOLINOS DE PUERTO RICO, INC.; SUCESORES PEDRO
CORTES, INC.; COLOMER & SUAREZ,INC.; SUPERMERCADOS PLAZA LOIZA;
MENDEZ & COMPANY, INC.; MARVEL SPECIALTIES, INC.,

Plaintiffs,

v.

VICTOR A. SUAREZ-MELENDEZ, in his official capacity as Interim
Executive Director of the Commonwealth of PR's Ports Authority;
MELBA I. ACOSTA-FEBO, in her official capacity as Secretary of
the Treasury of the Commonwealth of PR,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, <u>Magistrate Judge</u>]

---

Before

Howard, <u>Chief Judge</u>,
Lynch and Kayatta, <u>Circuit Judges</u>.

---

<u>Rafael Escalera-Rodríguez</u>, with whom <u>Carlos M. Hernández Burgos</u> and <u>Reichard & Escalera</u> were on brief, for appellants.

<u>Jorge Martínez-Luciano</u>, with whom <u>Martínez-Luciano & Rodríguez-Escudero</u>, <u>Guillermo San Antonio-Acha</u> and <u>GSA Law, LLC</u> were on brief, for appellee Víctor A. Suárez-Meléndez.

<u>Rosa Elena Pérez-Agosto</u>, Assistant Solicitor General, Department of Justice, with whom <u>Margarita Mercado-Echegaray</u>, Solicitor General, and <u>Tanaira Padilla-Rodríguez</u>, Deputy Solicitor General, were on brief, for appellee Melba I. Acosta-Febo, in her official capacity as Secretary of Treasury for the Commonwealth of Puerto Rico.

<u>Eyck Lugo-Rivera</u>, with whom <u>Eliseo Roques-Arroyo</u>, <u>Jelka L. Duchesne-Sanabria</u> and <u>Edge Legal Strategies, P.S.C.</u>, were on brief, for S2 Services Puerto Rico, LLC, amicus curiae.

---

August 17, 2015

---

**HOWARD**, **Chief Judge**.  The appellants are three shipping operators who pay a fee to Puerto Rico to conduct business out of the Port of San Juan.  The Commonwealth supplied each company with cargo-scanning technology, required them to scan all of their inbound cargo, and then charged each an additional fee.  The question on appeal is whether the dormant Commerce Clause bars Puerto Rico from charging the additional fee to defray the costs of the scanning.  Because the operators have failed to establish that the additional fee violates the Constitution, we affirm the magistrate judge's decision holding the same.

## I.

We draw the facts from the magistrate judge's findings following a bench trial.  See McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 113 (1st Cir. 2014).

This matter stems from the aftermath of the terrorist attacks of September 11, 2001, and the concomitant need to augment port security.  Until 2008, Puerto Rico's port security was predominantly limited to random and manual searches of cargo.  To bolster this piecemeal approach, the Legislative Assembly of Puerto Rico passed a law calling for improved safety procedures. P.R. Laws Ann. tit. 23, §§ 3221 et. seq.  The following year, the Puerto Rico Ports Authority ("PRPA") solicited proposals to implement that law with respect to its busiest port, the Port of San Juan.  In particular, it sought to craft a system where it

would be able to scan all inbound cargo at the port. In due course, PRPA reached an agreement with Rapiscan Systems, Inc., which assumed responsibility for the scanning. In turn, Rapiscan Systems transferred its rights and obligations to a subsidiary, S2 Services Puerto Rico, LLC ("S2 Services").

In late 2011, PRPA promulgated Regulation No. 8067, which required the scanning of all inbound cargo at the Port of San Juan. The regulation permitted PRPA personnel, in the event of undue delay, to reduce the amount of cargo scanned at a given time. Through these requirements, PRPA aimed to increase the identification of unreported taxable goods and to improve security and safety at the port. S2 Services and the Puerto Rico Treasury Department were responsible for carrying out this directive.

As of 2013, Puerto Rico installed scanning technology at the facilities of three shipping operators at the port of San Juan: Crowley, Horizon Lines, and Sea Star Lines. Except during particularly busy times, these three operators were required to scan all containerized cargo (though not their bulk cargo) and then have two S2 Service employees and one Treasury agent review those scans. In total, 313,383 containers have been electronically scanned, an amount substantially higher than the 7,142 containers manually searched during a prior, analogous time period.

To pay for the scanning, PRPA charged all vessels carrying cargo into the Port of San Juan (including cargo carried

by operators who did not have access to the scanning facilities) an "Enhanced Security Fee" ("ESF"). PRPA assessed the ESF on top of the existing fees that it already charged operators to utilize the port. The amount of the ESF varied based on the weight and type of the vessel's cargo. Since implementing the ESF, PRPA billed Crowley, Horizon Lines, and Sea Star Lines with 63% of all costs arising from the scanning procedure. In total, PRPA has collected $20,412,371.34 through the ESF, and it has used that money to pay: $17,136,894 to S2 Services, $2 million to Treasury employees, $1.4 million to the General Security Office, and $300,000 to the Office of Maritime Security.

In response to Regulation 8067 and the ESF, thirty-two businesses and organizations involved in importing cargo at the Port of San Juan (along with associated trade groups) sued the heads of PRPA and Puerto Rico's Treasury Department; they attacked both the regulation and the fee. The parties consented to proceed before a magistrate judge, and the court conducted a bench trial. The bulk of the evidence at trial centered on the constitutionality of the scanning regulation and the permissibility of the ESF as applied to all of the operators (as opposed to just the three with access to the scanning technology).

Following those proceedings, the court ruled that the scanning procedure implemented by Regulation 8067 was constitutional but that the ESF, as applied to the operators who

did not have access to the scanning facilities, violated the dormant Commerce Clause. The court thus entered an injunction prohibiting the government from collecting the ESF from those shipping operators. Neither the government nor the plaintiffs appealed those decisions.

The magistrate judge next turned to the constitutionality of the ESF as applied to the three shipping operators equipped with the scanning technology. As to these three companies, the court concluded that the ESF was constitutional. The three operators timely appealed that decision; they continue to argue that the ESF violates the dormant Commerce Clause.[1]

## II.

We review the lower court's factual findings following a bench trial for clear error and its legal conclusions de novo. See Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 730 F.3d 67, 74 (1st Cir. 2013).

The Constitution's Commerce Clause serves as both an affirmative grant of power to Congress, U.S. Const. art. I, § 8,

---

[1] We pause to highlight the fact that some of the lines PRPA has drawn -- e.g., that only three shipping operators are required to scan their cargo -- do strike us as odd. Perhaps, as the Commonwealth claims, this is simply the first step of many to come in implementing the regulation. Perhaps not. Either way, we need not dwell on such oddities. The three shipping operators have brought this appeal solely under the dormant Commerce Clause, and have only targeted the ESF as applied to them. Our analysis is therefore limited exclusively to that claim.

cl. 3, and "a further, negative command, known as the dormant Commerce Clause." Comptroller of Treasury of Md. v. Wynne, 135 S. Ct. 1787, 1794 (2015). This latter doctrine "precludes States 'from discriminat[ing] between transactions on the basis of some interstate element,'" id., and inhibits "economic protectionism" between the states, New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-74 (1988).

A litigant can wield the dormant Commerce Clause to attack the propriety of a "user fee," i.e. a charge assessed for the use of a government facility or service. In such cases, we apply a three-pronged test. See Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc., 405 U.S. 707, 716-17 (1972). A user fee is constitutional if it: "(1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." Nw. Airlines, Inc. v. Cty. of Kent, 510 U.S. 355, 368-69 (1994). Those challenging the government action carry the burden of persuasion. See N.H. Motor Transp. Ass'n v. Flynn, 751 F.2d 43, 47 (1st Cir. 1984).

**i.**

Turning to Evansville in the context of this case, we first consider whether the user fee "is based on some fair approximation of use of the facilities." Nw. Airlines, 510 U.S. at 369; cf. Capitol Greyhound Lines v. Brice, 339 U.S. 542, 546

- 7 -

(1950) (noting that a "rough approximation" is sufficient). This is essentially a question of allocation; we ask whether the government is charging each individual entity a fee that is reasonably proportional to the entity's use, and whether the government has reasonably drawn a line between those it is charging and those it is not. See Nw. Airlines, 510 U.S. at 368.

PRPA attempts to assess a fee to these three operators in an amount that is reasonably proportional to their use of the scanning services. PRPA requires the operators to scan nearly all of their containerized cargo (though their bulk cargo is not scanned), and then charges them an amount corresponding to the total cargo they import (comprising both containerized and bulk cargo). While not perfect, the fee was intentionally designed to approximate the operators' use of the scanning service. Moreover, these three operators are the only ones with access to the scanning service and, given the unchallenged injunction entered by the lower court, the only three that have to pay for it.[2]

Despite this conceptually sound approach, we see two potential flaws. First, the operators could be importing so much bulk cargo that the total amount of imports -- and thus the fee

---

[2] As noted previously, the plaintiffs succeeded below in establishing that the Commonwealth improperly assessed the ESF to operators without access to the scanning facilities. This likely explains why, on appeal, the three shipping operators do not argue that the other entities should also be required to pay the fee.

charged -- is grossly disproportionate to the containerized cargo that is actually scanned. Likewise, during particularly busy times, PRPA exempts some containerized cargo from the scanning procedures; if this occurs with significant frequency, then the fee may not match the operators' use of the scanning service. Ultimately, though, the burden lies with the three operators to prove that either of these concerns renders the fee improper. See Flynn, 751 F.2d at 47. This they have failed to do. Specifically, the operators have not produced evidence contrasting the total amount of cargo imported with the amount of cargo actually scanned for these three operators, nor have they provided specific evidence that the bypassing of containerized cargo occurs with such frequency that the ESF does not roughly correspond to their use of the scanning technology. While this record leaves us unable to definitively hold that the fee is a fair approximation of the operators' use of the scanning service, the operators' failure to prove the converse requires us to rule against them on this first Evansville factor.

The second Evansville query is whether the fee that the government charges is excessive when weighed against the benefits conferred. Though the case law utilizes the term "benefits" in characterizing this factor, this label is somewhat of a misnomer. Our task is actually fairly limited; we compare the fee with the "costs incurred in connection with . . . [the] facilities." Am.

Airlines, 560 F.2d at 1038. In other words, a fee is unconstitutional only insofar as it is "excessive in relation to costs incurred by the taxing authorities." Evansville, 405 U.S. at 719 (emphasis added).

The shipping operators again fail to satisfy their burden. PRPA charged these three operators roughly $ 18,617,449. It then spent over $ 20 million to implement the scanning procedure (specifically on the personnel necessary to conduct the scanning which, despite the operators' contention, is clearly a necessary expense related to the scanning service). If we add the revenue that PRPA collected from other operators, then PRPA brought in $20,412,371.34, and spent 97% of that money on costs related to the scanning service. Admittedly, these numbers may not reflect the entire picture. But, the operators have failed to provide other evidence establishing that PRPA collects an excessive amount compared to what it spends on the scanning service. Since it was the operators' burden to establish that proposition with "a record sufficiently specific and detailed," their failure to do so defeats their claim on this prong. Flynn, 751 F.2d at 48.[3]

---

[3] The operators emphasize that a small portion of the ESF is used to pay security fees that were previously paid for by another tariff (which is still being charged), and that said money is not used to directly pay for the scanning services. The operators do not challenge the continued validity of that other tariff, so our concern is solely with the ESF. To the extent that certain payments are made to general security-related items, the operators have not established that this payment is anything more than de

The final move in the _Evansville_ three-step is to determine whether the regulation discriminates against interstate commerce. Where we have a facially neutral regulation, as we do here (i.e., a Commonwealth corporation bringing cargo into the port, just like an out-of-Commonwealth company, would also pay the ESF), the law "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." _Pike_ v. _Bruce Church, Inc._, 397 U.S. 137, 142 (1970). Notably, a party cannot satisfy its burden simply by showing that a government action affects an out-of-state company or manufacturer. _See_ _Exxon Corp._ v. _Governor of Md._, 437 U.S. 117, 126 (1978). Instead, the evidence must illustrate that the government action interferes with interstate commerce by, for example, dissuading competition from out-of-state corporations. _See, e.g._, _Family Winemakers of Cal._ v. _Jenkins_, 592 F.3d 1, 10-11 (1st Cir. 2010).

On this point, not much need be said. The shipping operators contend that because only out-of-Commonwealth companies utilize the Port of San Juan, and therefore only out-of-Commonwealth entities will pay the ESF, the fee interferes with commerce. Fair enough. But, as noted above, just because a

---

minimis. Indeed, even without such payments, the government would still have collected less from these three operators than it paid out on scanning-related costs.

facially neutral policy has an impact on an out-of-state company (even exclusively so), it does not necessarily follow that the policy burdens commerce.  Id.  While the shipping operators make some rumblings that the scanning requirement interferes with commerce, they do not even attempt to fill the logical gap with any argumentation respecting the fee.  Nor, we note, have we found evidence in this record which could sustain such an argument.  The shipping operators therefore fall far short of their burden on this final Evansville factor.

### ii.

Though the shipping operators take a few swings at the Evansville analysis above, their central argument really takes place on a different playing field.  They attack the ESF by claiming that they (and the Commonwealth more generally) receive no benefit from the scanning procedure and that it is "wholly ineffective."  They home in on the magistrate judge's statement that the operators received a "reputational benefit" from the scanning -- a finding that they insist was clearly erroneous -- and then go to great lengths to argue that the scanning is in fact detrimental to their business.  Thus, they conclude: no user fee was ever appropriate; any fee is necessarily excessive given the lack of any benefit; and, any burden on interstate commerce necessarily outweighs the benefit created by this government service.

This argument misses the point; our decision in American Airlines explains why. In that case, a number of airlines paid a "landing fee" at Logan Airport in exchange for use of the runways. The airport (through MassPort) increased the fee it charged in order to pay for three new projects at the airport which were "deemed by the airlines of little or no use to them." Am. Airlines, 560 F.2d at 1037. Over a dormant Commerce Clause challenge, we sided with MassPort and emphatically rejected the idea that "customer judgments of benefits received" form any part of the constitutional analysis. Id. at 1038. Instead, the service must merely be "relevant to the operation of the [entity]." Id. at 1039. Thus, so long as the expenditures "were made for legitimate . . . objectives," and so long as the state does not run "wild and tax users for all extravagances," the actual service that the government provides is immaterial when considering the constitutionality of a user fee. Id.

Therefore, whether the shipping operators here obtain a reputational benefit from the scanning, whether they approve of the scanning from a business perspective, or whether it is the optimal way for PRPA to secure its ports, are not dispositive. Indeed, these questions all boil down to whether the scanning procedure is sound public policy, not whether the user fee is constitutionally valid. But, the Commerce Clause inquiry for user fees has never been, and is not now, whether the government service

- 13 -

or facility is ideal or advantageous.  For good reason.  If the heart of the dormant Commerce Clause beats to protect interstate commerce, then it is irrelevant whether a government service is beneficial.  That is, the success or failure of the service or facility itself has little bearing on whether the user fee restricts the flow of commerce.  Ultimately then, since PRPA has done nothing more than increase its fee to pay for a new, legitimate service -- one which, despite any shortcomings, is clearly relevant to the operation of the port -- and since said fee satisfies Evansville (which is essentially a short-hand test for determining whether a user fee infects interstate commerce), we reject the operators' policy-based contention.[4]

### III.

The three shipping operators have failed to prove that the ESF, as applied to them, violates the dormant Commerce Clause. Accordingly, we **affirm**.

---

[4] The operators also argue that they are involuntary subjects of the scanning requirement and thus cannot be "users" required to pay a user fee.  The shipping operators provide no case law for this proposition, nor do they provide any theoretical argument that would support their position.  In any event, the operators can hardly be said to be "involuntary" users for dormant Commerce Clause purposes.  The scanning is simply a service provided for using the port; a port that the operators voluntarily operate out of.  In choosing to do so, they have tacitly agreed to "share both the benefits and the costs of [PRPA's] decisions, including the imprudent ones."  Am. Airlines, 560 F.2d at 1039.