# United States Court of Appeals
## For the First Circuit

No. 16-1351

ROBERT CHASE,

Plaintiff, Appellant,

v.

UNITED STATES POSTAL SERVICE; MICHAEL KING; AND UNITED STATES,
AS SOLE DEFENDANT ON COUNTS III, IV, AND V,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Barron, Selya, and Stahl,
Circuit Judges.

Lori A. Jodoin, with whom Rodgers, Powers & Schwartz LLP,
were on brief, for appellant.
Christine J. Wichers, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
appellees.
David Conforto and Conforto Law Group, on brief for
Massachusetts Employment Lawyers Association as amicus curiae.
John Pagliaro and Martin J. Newhouse on brief for New England
Legal Foundation and Associated Industries of Massachusetts as
amicus curiae.

December 14, 2016

**STAHL**, **Circuit Judge**. The Family Medical Leave Act (FMLA) allows an employee up to twelve weeks of leave, in a twelve-month period, for a serious medical condition. 29 U.S.C. § 2612(a)(1)(D). Under the FMLA, an employee's absence from work due to a personal health concern, or that of a spouse, child, or parent, is protected from interference and retaliation by his employer. 29 U.S.C. § 2615(a).

Appellant Robert Chase alleged that his employer, the United States Postal Service (USPS), and supervisor Michael King, terminated him from the Brookline, Massachusetts Post Office in retaliation for taking FMLA leave. He brought interference and retaliation claims under 29 U.S.C. § 2615, arguing that King and USPS violated the FMLA by firing him while he was out of work on protected leave.

Following a bench trial, the district court held that King and the USPS did not violate the FMLA on the ground that King, as the USPS decisionmaker, did not have the requisite knowledge of the designation of Chase's medical leave necessary to hold defendants liable under the FMLA. This appeal followed, and we AFFIRM.

## I. Facts & Background

Chase worked as a letter carrier at the USPS Brookline Post Office for nearly fourteen years. During this time, Chase never received a negative performance review nor was he subject to

- 2 -

any disciplinary action.  King, manager of the Brookline Post Office, supervised Chase from 2005 until his termination on September 30, 2011.

### A. Accident and Leave of Absence

The accident leading to Chase's leave and allegedly contributing to his termination occurred on July 21, 2010, when an elderly woman fell asleep at the wheel of her car and struck Chase's vehicle while he was parked during his lunch break.  Chase was taken to the hospital and diagnosed with a serious shoulder injury including damage to his rotator cuff.  King personally went to the scene of the accident to observe the severity of the accident and injury and to prepare a report of the incident. King's report noted Chase's shoulder injury.

Following his injury, Chase applied for workers' compensation, despite being discouraged from doing so by King. This request was approved.  Chase also applied for and was granted FMLA leave.  USPS mailed a Designation/FMLA Approval Notice to Chase and to King which stated that "[Chase's] FMLA leave request is approved.  All leave taken for this reason will be designated as FMLA leave."[1]  Pursuant to USPS policy, Chase opted for a

_____

[1] King claims that he never received the FMLA notice and that he thought perhaps an office worker had filed the notice without first showing it to him.  He testified that he believed Chase's leave status was either "injured on duty" (IOD) or "out on workers' compensation" (OWCP), and that he assumed that Chase was not on FMLA leave because that leave is often unpaid and he believed that

continuation of pay and was fully compensated for the first 45 days of his leave, after which he received workers' compensation benefits amounting to two-thirds of his salary, tax-free, plus health insurance.  Chase's concurrent FMLA leave lasted from July 21, 2010 to October 12, 2010, but he remained on medical leave until September 30, 2011, when he was terminated.

### B. Workplace Tensions Between King and Chase

On several occasions, both before and during the course of these events, King publicly mocked Chase and accused him of faking injuries.  In September of 2006, Chase had injured his knee while on the job and subsequently missed a week of work.  At that time, in apparent response, King made an announcement over the Brookline Post Office loudspeaker, "[w]ill Bob Chase, the injury fraud specialist, please report to the office."  In August of 2010, a month after Chase's motor vehicle accident at issue in this case, King posted a job opening on the office bulletin board advertising a position for an "injury compensation specialist."  King then made an announcement mocking Chase:  "[T]here's a job posted on the bulletin board for an[] injury compensation specialist since you're the biggest fraud when it comes to injuries."  Brookline Post Office employee Maria Constantino testified that she heard King say that Chase was faking the 2010 shoulder injury he had

---

employees only used FMLA leave once they had exhausted all forms of paid leave, which to his knowledge Chase had not.

sustained in the car accident and heard King announce on multiple occasions, "Can I have the carrier on Route 92 [Chase] who is faking an injury come to the office, please?"

### C. USPS Disciplinary Action

On September 18, 2010, while on FMLA leave, Chase was arrested with his brother and charged with possession of cocaine with intent to distribute and conspiracy to violate drug laws, in violation of Mass. Gen. Laws ch. 94C, §§ 32A(a) and 40. The arrests were publicized in a local newspaper, the Brookline Tab. After seeing the article and arrest reports, King notified his then-manager, Lori Bullen, about the arrests, saying, "[i]t would be nice if we can proceed with something." Bullen forwarded King's email to Labor Relations indicating that Chase was "out OWCP [on workers' compensation] to boot."

Following the arrest Chase and King remained in fairly regular communication. During one of these conversations, Chase notified King that the criminal charges would soon be dismissed. King then turned the conversation to Chase's medical leave and began to threaten Chase with a workers' compensation fraud investigation if he did not return to work. Several Brookline Postal workers including Joseph DeMambro, the Chief Union Steward, and another employee, Wanda Jackson, testified that King believed that Chase was faking his current shoulder injury and that King was often suspicious of employees who took medical leave.

On January 18, 2011, King and Chase spoke over the telephone for a pre-disciplinary interview, during which they discussed how Chase's arrest and charges might affect his job. Chase and King ceased communicating after Chase phoned King asking for help to resolve an issue related to his medical leave and King responded, "go [expletive] yourself."

On January 27, 2011, King's manager approved the request that Chase be issued a Notice of Removal. On the following day, Labor Relations prepared for King a Notice for "Failure to Perform Duties in a Satisfactory Manner." King signed that Notice on February 1, 2011, and issued it to Chase. Chase was still on medical leave when he received the Notice of Removal. The dismissal notice cited Chase's arrest and refusal to answer questions during his pre-disciplinary interview. In response to the notice, Chase filed a grievance through his union, but USPS denied the grievance and his case proceeded to arbitration pursuant to the union contract. Before the final arbitration hearing, Chase's criminal case reached a favorable resolution when, on August 31, 2011, the conspiracy charge was dismissed outright and the charge of possession with intent to distribute was reduced to a charge of simple possession, to be dismissed upon completion of one year of pre-trial probation and random drug testing. The grievance process ultimately reached its conclusion on September 30, 2011, when the arbitrator ruled against Chase. The arbitrator

issued a final written decision, affirming Chase's removal on the grounds that USPS had shown through clear and convincing evidence that Chase had possessed a Class B illegal drug, which violated USPS policy.  He was officially terminated that same day.

### D. The FMLA

The FMLA provides an employee suffering from a serious injury or medical condition with up to twelve weeks of protected leave, in a twelve-month period.  29 U.S.C. § 2612(a)(1)(D).  An employee is eligible for FMLA leave for each of the following reasons:

    (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
    (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
    (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
    (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.
    (E) Because of any qualifying exigency . . . arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty . . . has been notified of an impending call or order to covered active duty) in the Armed Forces.

29 U.S.C. § 2612(a)(1).  In keeping with its comprehensive remedial purpose "to help working men and women balance the conflicting demands of work and personal life," the FMLA should be broadly construed.  See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 164 (1st Cir. 1998) (quoting Price v. City of Ft. Wayne, 117 F.3d 1022,

1024 (7th Cir. 1997)); see also Tcherepnin v. Knight, 389 U.S. 332, 336 (1967) (noting that "remedial legislation should be construed broadly to effectuate its purposes.")

FMLA leave may take many forms, including an unpaid leave of absence, a paid vacation, personal leave, family leave, medical leave, or sick leave. See 29 U.S.C. § 2612(c)-(d). FMLA leave may also run concurrently with other types of paid leave such as workers' compensation. 29 C.F.R. § 825.207(d)-(e). When making a request for leave, "the employee need not expressly assert rights under the FMLA or even mention the FMLA" for FMLA protection to attach. 29 C.F.R. § 825.302(c).

An employer may not interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the FMLA, nor may an employer discharge or discriminate against an individual who takes FMLA leave. 29 U.S.C. § 2615(a); see also 29 C.F.R. § 825.220(c); Hodgens, 144 F.3d at 160 n.4. Additionally, an employer may not include FMLA leave "as a negative factor in employment actions ... ." 29 C.F.R. § 825.220(c). While the FMLA itself does not explicitly contain a prohibition on retaliation for taking leave, courts have interpreted the Act to have such an implied prohibition. See Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 8 (1st Cir. 2012).

E. Procedural History

On June 29, 2012, Chase filed his Complaint in the United States District Court for the District of Massachusetts. He alleged FMLA interference (Count I) and FMLA retaliation (Count II) in violation of 29 U.S.C. § 2615. In addition, Chase sued King for intentional interference with advantageous business relations (Count III), intentional infliction of emotional distress (Count IV), and defamation (Count V). The United States substituted itself for King for Counts III-V under the Westfall Act, 28 U.S.C. § 2679, which allows the United States to step in as defendant for one of its employees where the employee is sued for damages as a result of an alleged tort committed within the scope of his or her employment.

On August 30, 2012, USPS and King moved to dismiss all claims. Chase opposed these motions and the court took them under advisement. At the close of discovery the defendants moved for summary judgment in their favor on all claims. Chase again opposed defendants' motions. The district court heard oral arguments on October 16, 2013. On November 4, 2013, the court granted summary judgement on all claims with the exception of the FMLA retaliation claim (Count II).

Count II proceeded to a bench trial on April 7-10, 2014. On March 1, 2016, the district court entered judgement for USPS and King, reasoning that the defendants could not have acted with

retaliatory animus because King lacked the requisite knowledge that Chase's leave was protected under the FMLA. Chase filed this appeal on March 31, 2016.

## II. Discussion

We review a district court's factual findings for clear error and its legal holdings de novo. Industria y Distribuction de Alimentos v. Trailer Bridge, 797 F.3d 141, 144 (1st Cir. 2015). We find no clear error in the district court's finding that King reasonably believed Chase was not out on FMLA leave, and we agree with the district court that King's knowledge was insufficient to support an FMLA retaliation claim.

To make out a claim for retaliation under the FMLA, a plaintiff must show that the employer "took the adverse action because of a prohibited reason [and not for] a legitimate non-discriminatory reason." Hodgens, 144 F.3d at 160. In order to make out a prima facie case of retaliation, the employee "must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." Id. at 161 (citing Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)). Because the employer's intent in FMLA retaliation claims is highly relevant, an employer cannot be found to have retaliated against an employee for invoking his rights under the FMLA or

- 10 -

taking FMLA leave unless the decisionmaker knew or should have known that the employee had invoked those rights. See Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 70 (1st Cir. 2015).

This case turns on whether there was a causal connection between the employee's protected activity (taking FMLA leave) and the employer's adverse employment action (termination). On appeal, Chase argues that the district court erred in determining that King did not believe that Chase was out on FMLA leave, and, therefore, cannot be held liable for retaliation under the FMLA. Chase argues King knew he was injured and knew the FMLA covered the first twelve weeks of his medical leave. Further, Chase asserts that even if King did not have direct knowledge of his FMLA leave, USPS's institutional knowledge binds the organization. We address these arguments in turn.

A. Retaliatory Animus

Chase contends that King knew he was on FMLA leave as a result of his on-the-job motor vehicle accident and argues the district court committed clear error in holding otherwise. It is undisputed that King was aware of Chase's injury, that he visited the scene of the accident and made a report, and that he was aware that Chase was out of work on medical leave; however, there is no evidence that King knew or should have known that Chase was out on protected FMLA-designated leave. Consequently, we find that Chase does not have a valid claim for FMLA retaliation because he failed

to prove that King acted with retaliatory animus towards his FMLA leave. See Ameen, 777 F.3d at 70 (holding that to succeed on an FMLA retaliation claim, a plaintiff "must show that the retaliator knew about [his] protected activity——after all, one cannot have been motivated to retaliate by something he was unaware of." (quoting Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013) (alteration in original))).

It is true beyond a doubt that King knew that Chase had suffered a serious injury, one that was both covered by workers' compensation and FMLA-eligible. Indeed, the injury ultimately resulted in FMLA leave being granted. However, the case presents an unusual situation in which King also reasonably believed that Chase was out on paid workers' compensation medical leave, rather than FMLA-designated leave. For this belief, King relied on a computer program that listed Chase as either "injured on duty" or "out on workers' compensation." In addition to the USPS internal computer system, which made no mention of Chase having been granted FMLA leave, King also testified that he neither received nor saw the FMLA notice that was allegedly mailed to both Chase and King.

King also reasonably concluded, as the district court found, that "even though seriously injured, it would not make sense [for] Chase to take FMLA leave until——at the earliest——his paid leave expired," Chase v. U.S. Postal Serv., 149 F. Supp. 3d 195, 212 (D. Mass. 2016), because using FMLA leave concurrently with

- 12 -

the more advantageous coverage available under workers' compensation would be redundant. In other words, given that King "reasonably believed that the FMLA's protections had been declined," id., he cannot be held liable in this case for a failure to inquire further into Chase's leave status, see, e.g., Dotson v. Pfizer, Inc., 558 F.3d 284, 295 (4th Cir. 2009) (FMLA retaliation can be found where the employer "was on notice that [the employee] was inquiring about his FMLA options" and "did not fulfill its duty to inquire about whether his leave should be classified as FMLA-protected"); 29 C.F.R. § 825.302(c) ("In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee.") (emphasis added).

Moreover, even King's workplace comments over the loudspeaker and to various employees, inappropriate as they may have been in polite company, or for that matter in employee relations, support the district court's conclusion that King actually believed that Chase was receiving workers' compensation and had not taken FMLA leave. As the district court sustainably found, "it was the workers' compensation leave—not the concurrent FMLA leave—which angered King and contributed to Chase's termination." Chase, 149 F. Supp. 3d at 213. Liability for retaliation under the FMLA is restricted to actions taken out of animus towards FMLA-protected leave. See 29 C.F.R. § 825.220(c)

- 13 -

(an employer may not consider an employee's use of FMLA leave "as a negative factor in employment actions").[2]  Chase's arguments, to the extent that they establish King's animus towards Chase for taking workers' compensation leave, are insufficient to show that King acted with any retaliatory animus in violation of the FMLA given that King had no actual or constructive knowledge that the FMLA had been invoked.

To be clear, actual knowledge on the part of an employer that a particular employee has specifically invoked the FMLA's statutory protections, as opposed to having taken leave for an injury or other condition which happens to be FMLA-protected, is

---

[2] We note that there is some tension in the case law as to the appropriate causation standard to apply in FMLA retaliation cases.  The currently operative Department of Labor Regulations (DOL), as indicated above, prohibit an employer from using an employee's decision to take FMLA leave as a "negative factor" in employment actions.  29 C.F.R. § 825.220(c).  We have previously held that DOL regulations interpreting the FMLA are entitled to deference under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).  See, e.g., Hodgens, 144 F.3d at 160 n.4; Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331 (1st Cir. 2005).  However, the Supreme Court has held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).  The district court concluded that Nassar had not changed the landscape for FMLA claims, and that the "negative factor" test promulgated by DOL continued to apply.  Given that Chase is unable to prevail under even the more lenient "negative factor" test, we save for another day the question of Nassar's impact on FMLA jurisprudence with respect to the required causation standard, and take no position on the district court's decision to grant the DOL regulations continued Chevron deference.

not the *sine qua non* of FMLA retaliation liability. After all, as the Department of Labor Regulations instruct, "the employee need not expressly assert rights under the FMLA or even mention the FMLA" to provide his employer with notice, 29 C.F.R. § 825.302(c), and as we noted in our first encounter with FMLA retaliation, the relevant inquiry in such cases is "whether there [was] sufficient evidence . . . for a jury to conclude that [the plaintiff's] discharge was motivated by retaliation for his having availed himself of a right protected by the FMLA, namely, the right to take medically necessary leave time." Hodgens, 144 F.3d at 169.

However, in the case before us, not only was King oblivious to the statutory character of the leave in question, but he had a reasonable and well-founded belief that Chase had not availed himself of FMLA protection, because it would not have made sense for him to do so while he was already receiving a more beneficial package under the workers' compensation regime. The information and records to which King was privy appeared to indicate only that Chase was receiving "paid leave [in the form of workers' compensation], under terms more favorable than the FMLA provides," Chase, 149 F. Supp. 3d at 212. Although this case is unusual in that the injury in question qualified Chase for FMLA leave, we do not believe that the district court clearly erred in concluding that the particular chronology and facts of this case

rendered King's belief that Chase had declined to invoke FMLA protection a reasonable one.

### B. General Corporate Knowledge

Finally, Chase argues that even if King reasonably believed that Chase was not out on FMLA leave, USPS had "general corporate knowledge" of the FMLA designation, which binds its conduct as a matter of law. Alston v. N.Y.C. Transit Auth., 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998). Chase's argument is inherently flawed because precedent does not support his basic proposition that corporate or managerial knowledge can override a decisionmaker's lack of knowledge in FMLA retaliation cases, for reasons we explain below.

In Ameen, this court declined to find retaliatory conduct because the plaintiff could not show that the decisionmaker knew that the plaintiff was engaging in protected activity, even though others in the company hierarchy did. 777 F.3d at 70 (citing Medina-Rivera, 713 F.3d at 139); see also Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) ("[T]here must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action."). Other circuits echo this decisionmaker knowledge requirement. See Henderson v. Chrysler Grp., LLC, 610 F. App'x 488, 496 (6th Cir. 2015); Brungart v. Bellsouth Telecomms., Inc., 231 F.3d 791, 800 (11th Cir. 2000); Cohen v. Fred Meyer, Inc., 686

F.2d 793, 797 n.5 (9th Cir. 1982).[3]  Based on these cases, there is no precedent to support Chase's proposition that USPS's general knowledge can substitute for King's lack of knowledge for purposes of this FMLA retaliation analysis.

### III. Conclusion

While King clearly demonstrated animus towards Chase for his absence, that animus was directed exclusively towards Chase's workers' compensation leave, not his FMLA leave.  Because King reasonably believed that Chase was not out on FMLA leave, we AFFIRM the district court's finding that King lacked the requisite knowledge necessary to hold him liable for retaliation in violation of the FMLA.  **Affirmed.**

---

[3] To the extent that these cases involve retaliatory actions based on statutes other than the FMLA, they are still informative because the discrimination analysis under each is highly analogous, if not identical, to that under the FMLA.