# United States Court of Appeals
## For the First Circuit

No. 18-2087

DANTZLER, INC.; NORTHWESTERN SELECTA, INC.;
ALBERIC COLÓN AUTO SALES, INC.; ALBERIC COLÓN DODGE CHRYSLER
JEEP, INC.; ALBERIC COLÓN FORD, INC.; ALBERIC COLÓN MITSUBISHI,
INC.; SACHS CHEMICAL, INC.; MAYS CHEMICAL COMPANY OF
PUERTO RICO, INC.; MADERAS ALPHA, INC.; CELTA EXPORT
CORPORATION; COUGAR PLASTICS CORPORATION;
CARIBBEAN PRODUCE EXCHANGE, LLC; MADEARTE FURNITURE IMPORTS &
DISTRIBUTORS, INC.; MADERAS 3C, INC.; MARJOR & SONS, INC.;
M.M. FASHION & DESIGN, INC.; PAPELERA DEL PLATA, INC.;
THE PAPERHOUSE CORP.; PLAVICA, INC.; EMPRESAS BERRÍOS, INC.;
JOSÉ SANTIAGO, INC.; CORREA TIRE DISTRIBUTOR, INC.;
EUGENIO SERAFIN, INC., d/b/a Est Hardware,

Plaintiffs, Appellees,

v.

EMPRESAS BERRÍOS INVENTORY AND OPERATIONS, INC.;
CORREA TIRE,

Plaintiffs,

v.

S2 SERVICES PUERTO RICO, LLC; RAPISCAN SYSTEMS, INC.,

Defendants, Appellants,

PUERTO RICO PORTS AUTHORITY, JOHN DOE; JANE DOE; ABC CORP.,
XYZ CORP.; UNKNOWN INSURANCE COMPANIES,

Defendants.

No. 18-2089

DANTZLER, INC.; NORTHWESTERN SELECTA, INC.;
ALBERIC COLÓN AUTO SALES, INC.; ALBERIC COLÓN DODGE CHRYSLER

JEEP, INC.; ALBERIC COLÓN FORD, INC.; ALBERIC COLÓN MITSUBISHI, INC.; SACHS CHEMICAL, INC.; MAYS CHEMICAL COMPANY OF PUERTO RICO, INC.; MADERAS ALPHA, INC.; CELTA EXPORT CORPORATION; COUGAR PLASTICS CORPORATION; CARIBBEAN PRODUCE EXCHANGE, LLC; MADEARTE FURNITURE IMPORTS & DISTRIBUTORS, INC.; MADERAS 3C, INC.; MARJOR & SONS, INC.; M.M. FASHION & DESIGN, INC.; PAPELERA DEL PLATA, INC.; THE PAPERHOUSE CORP.; PLAVICA, INC.; EMPRESAS BERRÍOS, INC.; JOSÉ SANTIAGO, INC.; CORREA TIRE DISTRIBUTOR, INC.; EUGENIO SERAFIN, INC., d/b/a Est Hardware,

Plaintiffs, Appellees,

v.

EMPRESAS BERRÍOS INVENTORY AND OPERATIONS, INC.; CORREA TIRE,

Plaintiffs,

v.

PUERTO RICO PORTS AUTHORITY,

Defendant, Appellant,

S2 SERVICES PUERTO RICO, LLC; RAPISCAN SYSTEMS, INC., JANE DOE; ABC CORP., XYZ CORP.; and UNKNOWN INSURANCE COMPANIES,

Defendants.

———————————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

———————————————

Before

Torruella, Dyk,[*] and Thompson,
Circuit Judges.

———————————————

* Of the Federal Circuit, sitting by designation.

Eyck O. Lugo-Rivera, with whom María Teresa Figueroa-Colón, Edge Legal Strategies, PSC, Mark C. Campbell, Matt Light, and Shook, Hardy & Bacon L.L.P. were on brief, for appellants S2 Services Puerto Rico, LLC and Rapiscan Systems, Inc.

Heriberto López-Guzmán, with whom H. López Law, LLC, Thomas Trebilcock-Horan, and Trebilcock & Rovira, LLC were on brief, for appellant Puerto Rico Ports Authority.

Elwood C. Stevens, Jr., with whom James P. Roy, Domengeaux Wright Roy & Edwards LLC, Manuel Sosa-Báez, Luis N. Saldaña, Ian P. Carvajal, Saldaña, Carvajal & Vélez-Rivé, PSC, Alberto J. Castañer, Castañer & Cía P.S.C., Deborah C. Waters, and Walters Law Firm, PC were on brief, for appellees.

———————

May 1, 2020

———————

TORRUELLA, Circuit Judge. These appeals concern a suit brought by a putative class of shippers (collectively, "Dantzler") who use the services of ocean freight carriers to import goods into Puerto Rico through the maritime port of San Juan. Their claims stem from a cargo scanning program implemented by the Puerto Rico Ports Authority ("PRPA") in an effort to improve the safety of the port. Pursuant to that program, PRPA contracted with Rapiscan Systems, Inc. ("Rapiscan") -- which later assigned its rights and obligations to its wholly-owned subsidiary S2 Services Puerto Rico LLC ("S2") -- to provide the technology and services needed to scan all containerized inbound cargo. To offset the costs of the program, PRPA charged the ocean freight carriers a fee for their use of the scanning facilities in the Port of San Juan. Dantzler alleges that, in response to that fee, ocean freight carriers were "forced" to be "collection agents" that collected fees from the shipper entities. Consequently, Dantzler brought a Section 1983 lawsuit against PRPA, Rapiscan, and S2 together, seeking money damages and requesting that the United States District Court for the District of Puerto Rico declare and enjoin the collection of the additional fee as violative of the United States Constitution and Puerto Rico law. The defendants filed motions to dismiss the complaint, which the district court

granted in part and denied in part.  They now appeal the partial denial of those motions.

In the end, their appeals reduce to a question of standing over which we have jurisdiction in these appeals from the denial of immunity.  See Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 20 n.22 (1st Cir. 2007).  For the following reasons, we find that Dantzler has failed to establish its constitutional standing to sue PRPA, Rapiscan, and S2, and thus we vacate the district court's order and remand for dismissal on jurisdictional grounds.

## I.  Background

Because these appeals follow from a decision on motions to dismiss, we draw the facts from Dantzler's amended complaint and any documents incorporated by reference therein.  See Katz v. Pershing, LLC, 672 F.3d 64, 69 (1st Cir. 2012).

### A.  Factual Background

On February 18, 2008, the Puerto Rico legislature enacted Act No. 12 of 2008 ("Act 12"), which called for improved safety procedures in Puerto Rico's ports.  P.R. Laws Ann. tit. 23, §§ 3221-3223.  Prior to this law, port security "was predominantly limited to random and manual searches of cargo."  Industria y Distribución de Alimentos v. Trailer Bridge, 797 F.3d 141, 143 (1st Cir. 2015).

As a result of Act 12, on December 17, 2009, PRPA contracted Rapiscan to provide cargo scanning services for the scanning of containerized inbound cargo at the Port of San Juan on behalf of PRPA. On August 6, 2010, with PRPA's consent, Rapiscan assigned its rights and obligations under the contract to its wholly-owned subsidiary, S2.

On February 16, 2011, PRPA and the Puerto Rico Treasury Department executed a "Memorandum of Understanding" ("MOU") in which PRPA acknowledged that "it [was] not the government instrumentality with the proper legal jurisdiction and authority to intervene as of right" in the "well known" practice of concealing items in cargo containers "to avoid -- among other reasons -- paying the applicable excise or other related taxes." The authority to inspect cargo containers upon their arrival in Puerto Rico inhered in the Puerto Rico Treasury Department "as one of its powers in furtherance of its goal to collect taxes." However, the MOU recalled that on August 2, 2007, PRPA and the Treasury Department had signed a multi-party agreement with other Puerto Rico agencies and instrumentalities whereby they "agreed to cooperate in order to implement Puerto Rico's tax laws."[1] Because

---

[1] Act 12 adopted the purpose, findings, and policy objectives of the August 2007 multi-party agreement. See P.R. Laws Ann. tit. 23, §§ 3221-3223.

-6-

of "the important public policy interest involved and in the spirit of interagency cooperation," PRPA and the Puerto Rico Treasury Department agreed that PRPA, via S2, would assist in the scanning of cargo that arrived at the Port of San Juan.

Subsequently, on September 2, 2011, PRPA approved Regulation 8067,[2] which enabled PRPA to "implement a fast[-]track method of inspecting inbound [c]argo [c]ontainers which will detect undisclosed taxable goods, as well as increase port security in the Port of San Juan, while preserving a free flow of commerce and the efficient movement of cargo." To recover the heightened costs associated with the scanning program incurred by PRPA, Regulation 8067 established a system of "Enhanced Security Fees" ("ESFs"), which were assessed by PRPA on ocean freight carriers or their agents arriving and unloading cargo in the Port of San Juan (in addition to existing fees already charged for use of the port).[3] Dantzler alleges, without any substantiation, that the defendants "forced ocean carriers . . . into becoming [d]efendants' [ESF]

_____

[2] Regulation 8067 is titled "Regulation for Implementing the Necessary Means to Guarantee an Efficient Flow of Commercial Traffic in the Scanning of Inbound Cargo Containers, to Improve Security and Safety at the Port Facilities, and/or to Otherwise Implement the Public Policy of the Commonwealth of Puerto Rico Delegated upon the Ports Authority."

[3] The amount of the ESF varied based on the weight and type of cargo.

collection agents" that "collected [ESFs] from shippers like [Dantzler]."

On October 16, 2013, a federal court found the ESFs unconstitutional "as applied to shipping operators that neither use nor have the privilege of using PRPA scanning facilities," because the imposition of such fees on those entities violated the Commerce Clause. Cámara de Mercadeo, Industria, y Distribución de Alimentos v. Vázquez, No. 11-1978, 2013 WL 5652076, at *12, *14 (D.P.R. Oct. 16, 2013). The court also enjoined PRPA from collecting ESFs from "shipping operators [whose cargo is] not being scanned pursuant to Regulation No. 8067." Id. at *15.[4] We upheld these rulings as well as the constitutionality of PRPA's scanning program as applied to shipping operators who have access to the scanning service. See Trailer Bridge, 797 F.3d at 143, 145. PRPA, through S2 and Rapiscan, allegedly continued to assess ESFs on shippers that imported cargo that was not containerized, on shippers which did not have access to scanning stations, and on shippers whose cargo was not scanned at all.

Pursuant to Regulation 8067, the authorization for using the scanning program would end on June 30, 2014, "unless [the]

---

[4] The court found that "[o]nly three shipping operators' terminals [were] . . . equipped with PRPA scanning facilities," and that bulk cargo was not scanned. Vázquez, No. 11-1978, 2013 WL 5652076, at *5.

-8-

term was extended, modified[,] or amended prior [to] its expiration." Although PRPA never modified, extended, or amended such term prior to June 30, 2014, it nevertheless "continued to implement the cargo scanning program despite and beyond its expiration." On October 28, 2016, the Puerto Rico Court of Appeals issued a judgment ordering PRPA to cease and desist from continuing to implement the program because Regulation 8067 had expired. See Cámara de Mercadeo, Industria y Distribución de Alimentos v. Autoridad de los Puertos, No. 2015-002, 2016 WL 7046805, at *8 (P.R. Ct. App. Oct. 28, 2016). Nevertheless, PRPA, Rapiscan, and S2 allegedly continued to assess and collect ESFs in connection with the scanning program.

PRPA, Rapiscan, and S2 have jointly "collected and derived economic benefit from the [ESFs]," which has caused Dantzler to "sustain[] substantial and continuing economic losses in total amounts . . . reasonably believed to be in excess of $150,000,000.00."

B. **Procedural History**

On April 5, 2017, Dantzler sued PRPA, Rapiscan, and S2 in the United States District Court for the District of Puerto Rico "seeking disgorgement of unlawfully collected scanning fees on shipments imported through the maritime port of San Juan." Subsequently, on August 30, 2017, it amended its complaint, seeking

relief pursuant to 42 U.S.C. § 1983 for PRPA, Rapiscan, and S2's alleged violation of Dantzler's constitutional rights under the Fifth and Fourteenth Amendments and the Commerce Clause of the United States Constitution. Dantzler alleged that the fees it and other similarly-situated shipper entities paid for the scanning of cargo imported through the Port of San Juan "were illegally collected by Defendants under color of law and authority." The amended complaint also asserted causes of action for unjust enrichment and restitution against all three defendants pursuant to Articles 7 and 1795 of the Puerto Rico Civil Code, respectively. Additionally, Dantzler sought a declaration that S2 was the alter ego of Rapiscan, an injunction of PRPA, Rapiscan, and S2's "unlawful conduct," and the reimbursement "for any monies paid pursuant to [that] unlawful conduct."

On December 19, 2017, Rapiscan and S2 filed a motion to dismiss the amended complaint for lack of subject-matter jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(1) and (12)(b)(6). They argued that (1) Dantzler lacked standing to challenge the ESFs because it was the ocean freight carriers who paid those fees, not Dantzler; (2) the amended complaint failed to state a claim under 42 U.S.C. § 1983 "because it [did] not allege that Rapiscan or S2 individually caused any violation of [Dantzler's] alleged constitutional rights";

-10-

(3) Rapiscan and S2 were entitled to qualified immunity "as a former and current government contractor"; and (4) the amended complaint "fail[ed] to state claims for unjust enrichment and undue collection under Puerto Rico law because it d[id] not allege that Rapiscan or S2 received compensation for their services without cause."

On May 23, 2018, PRPA also moved to dismiss the amended complaint for lack of subject-matter jurisdiction, failure to state a claim, and failure to join a required party under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7), respectively. PRPA, like Rapiscan and S2, asserted that Dantzler lacked constitutional standing to bring its claims because they were "improperly anchored on [the] [ocean freight] carrier's independent decisions to charge operating fees." PRPA also maintained that, in any event, (1) it was "cloaked with sovereign immunity" because it was "an arm of the state for purposes of the cargo scanning program"; (2) Dantzler's Section 1983 claims were mostly time barred; (3) the amended complaint failed to state a cause of action for unjust enrichment or undue collection; (4) Dantzler's claims grounded on PRPA's alleged ultra vires conduct were inapposite; and (5) Dantzler failed to include the ocean freight carriers, "who [were] indispensable to any litigation challenging the collection of ESFs."

-11-

On September 26, 2018, the district court partially granted Rapiscan, S2, and PRPA's motions to dismiss. Dantzler, Inc. v. P.R. Ports Auth., 335 F. Supp. 3d 226 (D.P.R. 2018). It dismissed Dantzler's Fifth and Fourteenth Amendment claims brought under Section 1983, but it denied the motions as to the Commerce Clause and Puerto Rico law claims. Id. at 239. We recount the court's rationale regarding the issues relevant on appeal.

First, the district court rejected PRPA, Rapiscan, and S2's standing argument, concluding that Dantzler had successfully established that it met the constitutional requirements for standing. Id. at 242. Specifically, the court found that, while the ESFs were imposed on ocean freight carriers, the carriers "collected those fees" from Dantzler, and thus, Dantzler was, "[a]t [a] minimum, . . . allegedly injured indirectly by the government regulation," and that injury was "fairly traceable" to PRPA, Rapiscan, and S2. Id. at 241-42.

Next, the district court also found that PRPA was not entitled to sovereign immunity because it was not "an arm of the state." Id. at 243. It concluded that, although the structural indicators used to determine whether Puerto Rico intended PRPA to be an arm of the state "point[ed] in different directions," id., because PRPA failed to demonstrate that Puerto Rico "would be liable for a judgment against PRPA in this case," or that "the

-12-

Puerto Rico Department of Treasury would pay for the damages in this action," id. at 244, PRPA was not entitled to immunity, id. at 245.

Finally, the district court determined that Rapiscan and S2 were not entitled to qualified immunity because they were "not individual people, and therefore [were] not government 'officials'" for purposes of the qualified immunity analysis. Id. at 253. In making its determination, the court adopted the Sixth Circuit Court of Appeals's position that "private corporations are not public officials" and cannot be entitled to qualified immunity. Id. at 252 (citing Hammons v. Norfolk S. Corp., 156 F.3d 701, 706 n.9 (6th Cir. 1998)).

On October 19, 2018, Rapiscan and S2 timely appealed the partial denial of their motion to dismiss based on standing and qualified immunity. PRPA similarly filed a notice of appeal seeking review of the district court's denial based on standing and sovereign immunity.

## II. Discussion

PRPA, Rapiscan, and S2 have a threshold argument in common: they assert that Dantzler's claims must be dismissed for lack of subject matter jurisdiction because Dantzler fails to satisfy the standing requirements of Article III of the United States Constitution to challenge the ESFs. "[B]ecause standing

-13-

is a prerequisite to a federal court's subject matter jurisdiction," Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016), and we must "assure ourselves of our jurisdiction under the federal Constitution" before we proceed to the merits of a case, Pérez-Kudzma v. United States, 940 F.3d 142, 144 (1st Cir. 2019), we begin (and end) by addressing the appellants' standing arguments.

## A. Article III Standing Principles

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 221 (1st Cir. 2019) (alteration in original) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006)). To "assure[] respect" for this limitation, Hochendoner, 823 F.3d at 731, "plaintiffs must 'establish that they have standing to sue,'" U.S. Dep't of Health & Human Servs., 923 F.3d at 221 (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).

"The existence vel non of standing is a legal question and, therefore, engenders de novo review." Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006); see also ITyX Solutions AG v. Kodak Alaris, Inc., 952 F.3d 1, 9 (1st Cir. 2020). PRPA, Rapiscan, and S2's challenge

-14-

of Dantzler's standing arises in the pleading stage, so this Court takes all well-pleaded facts in the complaint as true and "indulge[s] all reasonable inferences" in Dantzler's favor to determine whether it plausibly pleaded facts necessary to demonstrate standing to bring the action. Hochendoner, 823 F.3d at 730; see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) ("Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation."). Conclusory assertions or unfounded speculation will not suffice. See Hochendoner, 823 F.3d at 731.

Furthermore, the "irreducible constitutional minimum" of standing entails three elements. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016); Pérez-Kudzma, 940 F.3d at 144-45. A plaintiff must establish "(1) an injury in fact which is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) that the injury is 'fairly traceable to the challenged action,' and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" U.S. Dep't of Health & Human Servs., 923 F.3d at 221-22 (quoting Lujan, 504 U.S. at 560).

An injury is "concrete" if it is real, and not abstract. Spokeo, Inc., 136 S. Ct. at 1548. To be particularized, the plaintiff must have been affected "'in a personal and individual way' by the injurious conduct," Hochendoner, 823 F.3d at 731 (quoting Spokeo, Inc., 136 S. Ct. at 1548), and must allege "that he, himself, is among the persons injured by that conduct," id. at 732. The injury must either have happened or there must be a sufficient threat of it occurring to be actual or imminent. Katz, 672 F.3d at 71.

The "traceability" or causation element "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." Id. That connection "cannot be overly attenuated." Id. (quoting Donahue v. City of Bos., 304 F.3d 110, 115 (1st Cir. 2002)). "[C]ausation is absent if the injury stems from the independent action of a third party," id. at 71-72, so long as the injury is not the product of that third party's "coercive effect," Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 45 (1st Cir. 2005) (quoting Bennett v. Spear, 520 U.S. 154, 169 (1997)).

Finally, the redressability element of standing requires that the plaintiff allege "that a favorable resolution of [its] claim would likely redress the professed injury." Katz, 672 F.3d at 72. This means that it cannot be merely speculative that, if

-16-

a court grants the requested relief, the injury will be redressed. See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42-43 (1976).

Against this background, we now consider whether Dantzler has standing to bring its claims against PRPA, Rapiscan, and S2.

## B. Article III Standing for Claims Against PRPA

Dantzler posits that it has constitutional standing because it was among the "class of clearly foreseeable shippers" who were "harmed in their individual capacities by improper charges" and it satisfies all the requirements for standing. Specifically, Dantzler argues that (1) its injury does not deal with the regulation of ocean freight carriers but instead with the direct losses it suffered as a result of paying the ESFs, which caused an economic harm of approximately $150 million; (2) it has shown that PRPA's conduct "was a substantial factor in producing" its injury, and even an attenuated causal chain may satisfy Article III's standing requirements; and (3) its injury is redressable through a monetary award.

We are unconvinced by Dantzler's argument and instead agree with PRPA that Dantzler has failed to set forth allegations in its complaint that are sufficient to establish its Article III standing.

Dantzler's amended complaint alleges that PRPA's "negligent, reckless[,] and illegal act[]" of collecting ESFs in connection with the cargo scanning program has caused it and "other similarly situated shippers" to "sustain[] substantial and continuing economic losses in total amounts which are unknown at this time, but reasonably believed to be in excess of $150,000,000.00." While PRPA disputes the accuracy of these allegations, we must take them as true at this stage and determine whether they are sufficient to allege an injury-in-fact. See Hochendoner, 823 F.3d at 730. "It is a bedrock proposition that 'a relatively small economic loss -- even an "identifiable trifle" -- is enough to confer standing.'" Katz, 672 F.3d at 76 (quoting Adams v. Watson, 10 F.3d 915, 924 (1st Cir. 1993)). Thus, Dantzler's allegation of economic harm satisfies the injury-in-fact requirement. See id. Nevertheless, it stumbles over the remaining two requirements of Article III standing -- causation and redressability.

Dantzler fails to plausibly allege that PRPA's assessment and collection of ESFs from third parties not before the court -- i.e., the ocean freight carriers -- directly caused its injury. See id. at 77-78. The Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a

causal chain dependent on actions of third parties. See Allen v. Wright, 468 U.S. 737, 757-59 (1984) (finding the "links in the chain of causation" between the challenged conduct and the alleged injury "far too weak for the chain as a whole to sustain . . . standing" where the chain involved "numerous third parties" whose independent actions had an uncertain and speculative effect); Simon, 426 U.S. at 42-45 (finding that decisions by a third party were too uncertain, which broke the chain of causation between the injury and the challenged actions). The injury Dantzler alleges it suffered depended on the actions of the ocean freight carriers, the entities that were required to pay the ESFs to PRPA. Dantzler did not directly pay the ESFs to PRPA, nor did PRPA assess the ESFs on Dantzler; rather, Dantzler alleges, without elaboration, that the ocean freight carriers collected ESFs from their customers -- i.e., the shipper entities like Dantzler. As the injury here is indirect, Dantzler has a much more difficult job proving a causal chain. See Lujan, 504 U.S. at 562; Simon, 426 U.S. at 44-45.

Dantzler alleged in its amended complaint the following:

According to Regulation 8067, the ocean carriers or their agents[] must pay PRPA the [ESFs] to recover the costs incurred by PRPA in the scanning program. Ocean carriers and their agents, in turn, collected [ESFs] from shippers like named Plaintiffs and putative class members who import cargo through the maritime ports of San Juan. Thus, in furtherance of their scheme, Defendants, Rapiscan, S2 Services and

> [] PRPA purposely forced ocean carriers and their agents into becoming Defendants' [ESF] collection agents.

But Dantzler's allegation "is nothing more than a bare hypothesis that [ocean freight carriers] possibly might push this aspect of [their] operational costs onto [Dantzler]." Katz, 672 F.3d at 77. Under the regulation, ocean freight carriers had to pay PRPA the ESFs, but neither the regulation nor PRPA controlled the ocean freight carriers' relationships with their customers, such as Dantzler. Dantzler does not otherwise plausibly allege that ocean freight carriers were forced by PRPA (or Rapiscan and S2) to collect the ESFs from Dantzler (or anyone else). See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor does Dantzler plausibly allege that PRPA coerced the ocean freight carriers to collect the ESFs from Dantzler. See Wine & Spirits Retailers, Inc., 418 F.3d at 45.

The complaint does not describe Dantzler's injury "in terms specific enough to indicate that it will result from" PRPA's imposition of ESFs on ocean freight carriers rather than from a "multitude of other factors." Pérez-Kudzma, 940 F.3d at 145. As a result, Dantzler fails to demonstrate how PRPA imposing ESFs on a third party caused the injury of which it complains. This case is therefore very similar to Ammex, Inc. v. United States, 367 F.3d 530 (6th Cir. 2004), which held that a gas station did not

have standing to challenge gas taxes paid by suppliers from which the station purchased gasoline.  Id. at 534.  Moreover, Dantzler has not provided sufficient "factual matter," Iqbal, 556 U.S. at 677, in its complaint to support its theory that the ocean freight carriers were "forced" into being the defendants' "collection agent."  Dantzler thus fails to satisfy the causation requirement for Article III standing.

While this is dispositive of Dantzler's standing argument, we also address the redressability requirement, as these two elements "hinge on the response" of the ocean freight carriers -- the party charged the ESFs.  See Lujan, 504 U.S. at 562 (finding that "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction").

For much the same reason there is no causation, Dantzler fails to successfully allege redressability.  Although Dantzler need not demonstrate that its entire injury will be redressed by a favorable judgment, it must show that the court can fashion a remedy that will at least lessen its injury.  Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 318 (1st Cir. 2012); see also Simon, 426 U.S. at 43-46 (requiring that plaintiffs show it is likely, rather than speculative, that their injury will be redressed).  The complaint in this case seeks predominantly

-21-

injunctive and declaratory relief. Because redressing Dantzler's injury depends in large part, if not in total, on the conduct of the ocean freight carriers -- namely, what they decide to charge (disguised as ESF-related costs or otherwise) to their customers -- it is far from certain that enjoining PRPA from collecting ESFs from the ocean freight carriers, or declaring ESFs unconstitutional, will guarantee that those carriers lower the costs they charge Dantzler. See Lujan, 504 U.S. at 568; Simon, 426 U.S. at 45-46. The ocean freight carriers, who were not made parties to the case, would not be bound to treat Dantzler differently in the event of an injunction or declaration of unconstitutionality. Thus, Dantzler has not demonstrated that its injury would be alleviated by the relief the district court could have provided in this case[5] and has thus failed to show redressability.

Accordingly, Dantzler has failed to satisfy the constitutional standing requirements with respect to its Commerce Clause and Puerto Rico law claims against PRPA.[6]

---

[5] We acknowledge that Dantzler satisfies the redressability requirement insofar as it seeks money damages to redress its economic injury. See Donahue v. City of Bos., 304 F.3d 110, 116 (1st Cir. 2002) (requiring that courts examine whether a plaintiff has standing for each form of relief sought). However, as we already explained, it still fails to establish causation, which is fatal to the standing inquiry.

[6] While our conclusion makes it unnecessary to reach PRPA's

-22-

## C. Article III Standing for Claims Against Rapiscan and S2

For substantially the same reasons as we find that Dantzler lacked standing to assert its claims against PRPA, we hold that Dantzler similarly fails to set forth allegations in its complaint that are sufficient to establish its constitutional standing to sue Rapiscan and S2. Additionally, we emphasize the limited role that Rapiscan and S2 play in the alleged scheme. Rapiscan and S2 simply provide the scanning services for containerized cargo that arrives at the Port of San Juan pursuant to a contract with PRPA. Rapiscan and S2 are not involved in the assessment or collection of the ESFs. Indeed, the complaint alleges that ocean freight carriers paid those fees exclusively to PRPA.

Consequently, Dantzler does not plausibly allege that its injury resulted from Rapiscan and S2's actual scanning of cargo or from accepting payment from PRPA for its scanning services,

argument that it is entitled to sovereign immunity, we note that given the analytical framework set forth in Grajales v. P.R. Ports Auth., 831 F.3d 11 (1st Cir. 2016), combined with the fact that the cargo scanning program was implemented to further the governmental purposes of improving national security and ensuring proper tax collection, we find it difficult to see how PRPA cannot be cloaked with sovereign immunity here in its performance of an inspection function that is governmental in nature. See id. at 20 n.9; see also Thacker v. Tenn. Valley Auth., 139 S. Ct. 1435 (2019). We view this, thus, as an alternative ground supporting our ultimate conclusion vacating and remanding the district court's order and partial judgment.

which to some extent was derived from PRPA's collection of ESFs from the ocean freight carriers. It follows, thus, that the causal chain in this scenario is even more attenuated (if not completely broken) than it is in the scenario above with respect to PRPA, as Rapiscan and S2 were not engaged in either the assessment or collection of the ESFs that allegedly injured Dantzler. Therefore, neither the assessment nor the collection of the ESFs is "fairly traceable" to Rapiscan and S2. Pérez-Kudzma, 940 F3d at 145; see Katz, 672 F.3d at 71 (finding that "the opposing party must be the source of the harm").

Likewise, with respect to Dantzler's claims against Rapiscan and S2, redressability not only depends on the conduct of the ocean freight carriers who are not parties to this case, but the injunctive and declaratory relief Dantzler seeks, if granted against Rapiscan and S2, would have absolutely no effect to remedy the alleged injury because it is PRPA who imposes the fees Dantzler alleges are being collected from it.[7] And since "a federal court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the

---

[7] We do not interpret Dantzler's claims to challenge the actual scanning service performed by Rapiscan and S2 but the assessment of ESFs by PRPA as a consequence of the costs incurred by the scanning program.

-24-

court," Dantzler has not met the redressability requirement as to its claim for damages. See Simon, 426 U.S. at 41-42. Thus, Dantzler has not demonstrated that its injury would be lessened by the relief it requests from the court with respect to Rapiscan and S2, and thus fails to show redressability. Accordingly, Dantzler lacks Article III standing to assert its claims against Rapiscan and S2.

We need not go further. We agree with PRPA, Rapiscan, and S2 that Dantzler has failed to set forth allegations in its complaint that are sufficient to establish its Article III standing. We therefore conclude that Dantzler cannot assert its claims against the defendants.

### III. __Conclusion__

For the foregoing reasons, we vacate the district court's order and partial judgment and remand for dismissal on jurisdictional grounds. The parties shall bear their own costs.

__Vacated and Remanded__.