# United States Court of Appeals
## For the First Circuit

No. 22-1342

R&D MASTER ENTERPRISES, INC.; PRO PAVE CORP.; MATRIX
TRANSPORT, INC.; JOSÉ A. ROVIRA GONZÁLEZ; MARÍA MAGDALENA DÍAZ
VILA; CONJUGAL PARTNERSHIP ROVIRA-DÍAZ,

Plaintiffs, Appellants,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO;
ROBERT F. MUJICA JR., in his official capacity as Executive
Director of the Financial Oversight and Management Board for
Puerto Rico,[*]

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raúl M. Arias-Marxuach, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson, Circuit Judge,
and Burroughs,[**] District Judge.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), FOMB Executive
Director Robert F. Mujica Jr. has been substituted for former FOMB
Executive Director Natalie A. Jaresko.

[**] Of the District of Massachusetts, sitting by designation.

Carlos M. Lamoutte Navas, with whom Humberto Guzmán-Rodríguez and Guzmán & Rodríguez-López Law Office were on brief, for appellants.

Guy Brenner, with whom Timothy W. Mungovan, John E. Roberts, Adam L. Deming, Martin J. Bienenstock, Mark D. Harris, and Proskauer Rose LLP were on brief, for appellees.

––––––––––––––––––

July 25, 2023

––––––––––––––––––

**THOMPSON, <u>Circuit Judge</u>.** Several Puerto Rico corporations and individuals -- R&D Master Enterprises, Inc., Pro Pave Corp., Matrix Transport, Inc., José Rovira González, and María Magdalena Díaz Vila (together, Appellants) -- challenge the dismissal of their lawsuit against the Financial Oversight and Management Board for Puerto Rico (FOMB) and its executive director. In that suit, Appellants claimed that the FOMB's alleged failure to review a $384 million loan sale agreement between the Economic Development Bank for Puerto Rico (BDE, by its Spanish acronym) and a private investment company, violated their constitutional and statutory rights, and sought to have the court compel such review. The district court dismissed the suit on timeliness grounds, reasoning that a one-year statute of limitations applied to Appellants' claims, all of which were brought outside of that one-year window. Before us, Appellants assert that their lawsuit was timely. We must take a different course, however, since we conclude that Appellants lack Article III standing. So we affirm the district court's dismissal, albeit on standing grounds. Our reasoning follows.

## Background

This dispute concerns the FOMB's alleged failure to review a loan sale agreement prior to its execution. So, before jumping in to describe that transaction, we'd better explain the law and some of the players.

- 3 -

*PROMESA, FOMB, and the Contract Review Policy*

In 2016, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), which sought to address Puerto Rico's fiscal crisis. See In re Fin. Oversight & Mgmt. Bd. for P.R., 37 F.4th 746, 750 (1st Cir. 2022), cert. denied sub nom. Pierluisi v. Fin. Oversight & Mgmt. Bd. for P.R., 143 S. Ct. 1070 (2023). PROMESA created the FOMB, a presidentially appointed board "with wide-ranging authority to oversee and direct many aspects of Puerto Rico's financial recovery efforts," including the certification of fiscal plans and Puerto Rico's annual budget. Id.; see 48 U.S.C. §§ 2121, 2141-2147. Relevant here, PROMESA granted the FOMB authority to "establish policies to require prior [FOMB] approval of certain contracts . . . to ensure such proposed contracts promote market competition and are not inconsistent with the [FOMB] approved Fiscal Plan." 48 U.S.C. § 2144(b)(2).

Pursuant to that authority, the FOMB crafted a contract review policy (after this, just Policy) covering any contract "proposed to be entered into by the Commonwealth . . . or any covered instrumentality."[1] The Policy requires the FOMB to review and approve all contracts with an aggregate expected value of $10 million or more prior to its execution. If a contract subject to

---

[1] The BDE is a covered instrumentality under PROMESA.

- 4 -

the Policy "fails to comply" with the same -- that is, the FOMB's review determines that it does not promote market competition and is inconsistent with the applicable fiscal plan -- the FOMB "may take such actions as it considers necessary to ensure that such contract . . . will not adversely affect [Puerto Rico's] compliance with the Fiscal Plan, including by preventing the execution or enforcement of the contract . . . ." Id. § 2144(b)(5).

*The Loan Sale*

Next, we sketch out the basics of the transaction at issue. In September 2018, the BDE agreed to sell off a portfolio of loans to PR Recovery and Development JV, LLC (PR Recovery), a Delaware-incorporated investment company. The loan portfolio was valued at over $384 million, and the BDE agreed to sell it at a 91% liquidation discount. The BDE did not submit the loan sale agreement to the FOMB for approval before executing it, so the FOMB did not review it for compliance with the Policy.

Soon after the sale, PR Recovery "initiated aggressive collection and foreclosure actions" in Puerto Rico courts against hundreds of borrowers, including Appellants. Appellants assert that PR Recovery should not have been able to purchase their loans because their individual loan-level contracts contained restrictions prohibiting the BDE from transferring these loans to any entity that is not a bank, trust, or financial institution. PR Recovery, Appellants charge, is none of these. As a result,

- 5 -

Appellants claim to have been forced to pay up on their loans despite the "sham transaction" that the FOMB had an obligation to scrutinize.[2]

*How We Got Here*

In July 2021, Appellants filed suit in the District of Puerto Rico charging constitutional violations under the Fourteenth Amendment's Due Process and Equal Protection Clauses, and a statutory violation under PROMESA, all against the FOMB and its executive director. (Appellants did not name the BDE and PR Recovery, though.) For relief, Appellants asked the court to order the FOMB to review the loan sale agreement and either approve or reject it.

Fast-forward a couple months. The FOMB moved to dismiss, arguing primarily that Appellants lacked Article III standing to bring the suit, and that the complaint otherwise failed to state a claim for relief, interposed with a brief argument that the claims were time-barred. The district court picked up the FOMB's three-paragraph timeliness argument and ran with it. It ruled that Appellants' claims were time-barred, applying a one-year statute of limitations to all of Appellants' claims, which fell outside of that timeframe. Despite the FOMB's challenge to the

---

[2] In July 2019, the BDE sued PR Recovery and several related entities in Puerto Rico's Commonwealth court for fraud and breach of contract, among other claims, seeking to nullify the loan sale agreement. We're told that lawsuit remains pending.

court's subject-matter jurisdiction, the court's opinion and order made no mention of it.

This appeal followed and now we enter the mix.

**Discussion**

We review the district court's dismissal of Appellants' claims de novo and may affirm the dismissal on any basis made evident by the record. In re Fin. Oversight & Mgmt. Bd. for P.R., 54 F.4th 42, 52 (1st Cir. 2022); Katz v. Pershing, LLC, 672 F.3d 64, 70-71 (1st Cir. 2012).

Before us, Appellants assert that their claims are timely, contending that the continuing violation doctrine applies to keep their claims alive, and (in the alternative, we gather) recharacterizing their complaint as one seeking only mandamus relief, which they say insulates them from any statute of limitations hurdle.

Rather than wade through Appellants' two arguments and the FOMB's counter to the same, we must begin and end with Article III standing.[3] After laying out some basic standing principles,

---

[3] The FOMB posits that the district court's resolution of its motion to dismiss "was a permissible exercise of hypothetical jurisdiction." It cites our well-established rule that "resolution of a complex jurisdictional issue may be avoided when the merits can easily be resolved in favor of the party challenging jurisdiction," Cozza v. Network Assocs., Inc., 362 F.3d 12, 15 (1st Cir. 2004). That's not exactly right, so we pause to clarify. We cannot bypass any jurisdictional issues if those issues, like the ones we've encountered here, implicate Article III's "case" or "controversy" requirement. See Restoration Pres. Masonry, Inc. v.

we assess whether Appellants' complaint has plausibly alleged that they have standing to sue -- spoiler alert, it has not.[4]

*Standing*

Article III of the Constitution gives federal courts the power to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2. "That power includes the requirement that litigants have standing." California v. Texas, 141 S. Ct. 2104, 2113 (2021). Standing doctrine seeks to ensure that courts only rule on "genuine, live dispute[s] between adverse parties." Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 266 (1st Cir. 2022) (alteration in original) (quoting Carney v. Adams, 141 S. Ct. 493, 498 (2020)), cert. granted, 143 S. Ct. 1053 (2023). The party seeking relief from a federal court (that's Appellants here) bears the burden, from beginning-to-end of the lawsuit, to show that it has standing.

---

Grove Eur. Ltd., 325 F.3d 54, 59 (1st Cir. 2003). "Article III jurisdiction is always an antecedent question" to resolving a case on the merits. Id. (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)).

[4] Despite the FOMB challenging Appellants' standing at each stage of this litigation, our review of Appellants' briefing -- here and below -- reveals that Appellants have not devoted a single keystroke to explaining how they have standing. Appellants' failure to respond to this dispositive hurdle is ultimately at their peril. See In re Fin. Oversight & Mgmt. Bd. for P.R., 52 F.4th 465, 477 n.10 (1st Cir. 2022). Regardless, we have "an independent obligation to assure that standing exists," Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009), so we proceed to assess Appellants' allegations and briefly explain why they have no standing without the benefit of their attempt to convince us otherwise.

See <u>Virginia House of Delegates</u> v. <u>Bethune-Hill</u>, 139 S. Ct. 1945, 1951 (2019).

At the pleading stage (meaning post-complaint but pre-discovery), we take all well-pled facts in the complaint as true and indulge all reasonable inferences in Appellants' favor. <u>Dantzler, Inc.</u> v. <u>Empresas Berríos Inventory & Operations, Inc.</u>, 958 F.3d 38, 46-47 (1st Cir. 2020). Still, Appellants must "clearly . . . allege facts demonstrating" three elements: first, that they've "suffered an injury in fact," second, that the injury is "fairly traceable to the challenged conduct of the defendant," and third, that the injury "is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc.</u> v. <u>Robins</u>, 578 U.S. 330, 338 (2016) (quoting <u>Warth</u> v. <u>Seldin</u>, 422 U.S. 490, 518 (1975)).

Within this multi-part assessment are yet more factors. To satisfy the injury-in-fact requirement, Appellants must allege the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." <u>Katz</u>, 672 F.3d at 71 (quoting <u>Lujan</u> v. <u>Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)). To pass traceability (also called "causation") Appellants need to allege a "sufficiently direct causal connection between the challenged action and the identified harm." <u>Id.</u> Finally, redressability requires Appellants to allege "that a favorable resolution of [their] claim

- 9 -

would likely redress the professed injury." Id. at 72. One more dimension -- Appellants need to successfully get through all the above for each type of relief they seek. See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). Here, Appellants only seek equitable relief compelling the FOMB's review.[5]

With these principles in tow, we turn to Appellants' standing deficiencies.

*Our Take*

Recall the basics of Appellants' lawsuit. Appellants took out loans from the BDE, which sold the loans off to PR Recovery at a discount. PR Recovery then started swiftly collecting on the loans. Appellants say the transaction was a sham. But in this lawsuit, Appellants didn't sue the BDE for how they sold off the loans or PR Recovery for how they collected on them. Instead, they sued the FOMB. They claim that the FOMB violated their rights under the Constitution and PROMESA. How so? By failing to follow its own Policy requiring it to review the allegedly troubled loan sale agreement. Remember, the FOMB enacted a Policy requiring its review of any proposed contract over $10 million with a government entity as a party, like the contract here for over $384 million

---

[5] As part of their timeliness arguments, Appellants tried to characterize their complaint as only seeking mandamus relief, though their briefing fails to explain how their complaint does so. In any event, we read the face of their complaint, particularly its prayer for relief, to clearly seek injunctive relief.

between the BDE and PR Recovery, before that contract gets a signature. If the FOMB's review flunks the contract, the FOMB can, at its discretion, axe the transaction. But that review never happened here. Now, years later, Appellants want a federal court to order the FOMB's review of the loan sale agreement.

In standing terms, we first consider whether Appellants have claimed a legally cognizable interest. We take Appellants to allege either that the FOMB's failure to review the bogus loan sale agreement was a procedural injury in and of itself, or indirectly caused PR Recovery's collection efforts against Appellants, so now Appellants must pay loans that never should have been sold off. Presumably, Appellants want the transaction nullified, but for redress, they've only asked the court to compel the FOMB to follow its review process and scrutinize the loan sale agreement. Even if we assume that Appellants' supposed injury is the denial of a "procedural right" created by PROMESA and the Policy, they have failed to allege, nor (we reiterate) did they develop an argument, that such a right exists to protect their "concrete interests." See Lujan, 504 U.S. 555 at 573 nn. 7-8 ("The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy[,] . . . so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of

- 11 -

his standing."). And if we take Appellants' complaint to instead allege a traditional "pocketbook injury," see California v. Texas, 141 S. Ct. at 2114, that theory likewise fails to provide a basis for standing because, as we'll explain next, the alleged injury is neither traceable nor redressable here. Thus, Appellants lack standing even assuming (without deciding) that their alleged injury is legally cognizable.

The FOMB's failure to review the contract is not traceable to Appellants' claimed injury because it is "indirect" at best and relies on the actions of third parties, PR Recovery, and the BDE. See Dantzler, Inc., 958 F.3d at 48. Here's why. Appellants took out loans from the BDE that the BDE then sold off to PR Recovery, and, with or without the FOMB review process, PR Recovery decided to collect on them. So, Appellants' injury was directly caused by PR Recovery's collection efforts, and Appellants do not allege that the FOMB directly caused any collection to take place, nor do Appellants allege that the FOMB's inaction bears any relationship to PR Recovery's collection efforts beyond a "bare hypothesis" that it did. See id. at 48-49 (quoting Katz, 672 F.3d at 77).

Similarly problematic for Appellants is redressability because Appellants' allegations on this track are too speculative. The only relief Appellants seek is for the court to compel the FOMB to follow its Policy and review the loan sale agreement. What

then?  For a few reasons, we can't say.  First, Appellants have not alleged facts to suggest that an initial rejection is likely.  See Lujan, 504 U.S. at 561, 570-71; Dantzler, Inc., 958 F.3d at 49.  The FOMB's scope of review, per the Policy, is compliance with the fiscal plan, but Appellants allege nothing to that effect, rather only malfeasance with the underlying transaction between the BDE and PR Recovery.  Second, even if the FOMB rejects a contract, PROMESA grants it full discretion to take any action it decides to.  See 48 U.S.C. § 2144(b)(5) ("If a contract . . . fails to comply with [the Policy], the [FOMB] may take such actions as it considers necessary to ensure that such contract, . . . will not adversely affect the territorial government's compliance with the Fiscal Plan, including by preventing the execution or enforcement of the contract . . . .") (emphases ours).  Here, Appellants make no allegations, beyond mere conjecture, that the FOMB would likely rescind the contract.  See ASARCO Inc. v. Kadish, 490 U.S. 605, 615 (1989) (finding no redressability where that redress depended upon the discretion of independent policymakers).  And we fail to see how, save for full nullification of the contract, Appellants would not have to keep paying on their loans,

- 13 -

adding yet more uncertainty to the impact of Appellants' requested relief.[6]

The upshot is that Appellants' complaint has failed to allege that the FOMB's inaction caused their claimed injury, but even if it did, a court order compelling the FOMB to review the loan sale agreement might do nothing at all to redress Appellants' injury.

## Conclusion

For these reasons, we conclude that Appellants lack standing to bring this lawsuit and affirm its dismissal, which operates without prejudice. See Hochendoner v. Genzyme Corp., 823 F.3d 724, 736 (1st Cir. 2016).

---

[6] To the extent Appellants might have some defense to a collection action, say fraud or statute of limitations, they can raise it in a direct proceeding between themselves and PR Recovery.

- 14 -