13-2921-cv
Crown Castle v. Town of Greenburgh

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 40 Foley Square, in the City of New York, on the 17ᵗʰ day of January, two thousand fourteen.

PRESENT:  REENA RAGGI,
          DENNY CHIN,
          CHRISTOPHER F. DRONEY,
                    Circuit Judges,

- - - - - - - - - - - - - - - - - - - -x

CROWN CASTLE NG EAST INC.,
                    Plaintiff-Appellee,

                    -v.-                    13-2921-cv

TOWN OF GREENBURGH, NEW YORK, TOWN BOARD
OF THE TOWN OF GREENBURGH, NEW YORK,
                    Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLEE:    T. SCOTT THOMPSON, Davis Wright
                           Tremaine LLP, Washington, D.C.

FOR DEFENDANTS-APPELLANTS:   ANTHONY T. VERWEY (Andrew D.H. Rau, Amanda J. Sundquist, on the brief), Unruh, Turner, Burke & Frees, P.C., West Chester, Pennsylvania.

Appeal from the United States District Court for the Southern District of New York (Seibel, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Town of Greenburgh and its Town Board (together, the "Town") appeal from a judgment entered on July 9, 2013, to the extent it ordered the Town to grant the applications of plaintiff-appellee Crown Castle NG East Inc. ("Crown Castle") for special permits to install wireless telephone equipment. Judgment was entered after the district court issued its opinion and order on July 3, 2013, granting Crown Castle's motion for summary judgment with respect to Count III of its first amended complaint, which alleged a violation of § 332(c)(7)(B)(iii) of the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c)(7)(B)(iii).[1]  See Crown Castle NG East

---

[1]  The district court also granted the Town's motion to dismiss Counts I and II of the first amended complaint, which asserted violations of 47 U.S.C. §§ 253 and 332(c)(7)(B)(ii), respectively.  Crown Castle has not appealed the dismissal of these counts.

Inc. v. Town of Greenburgh, N.Y., No. 12-cv-6157, 2013 WL 3357169, at *1 (S.D.N.Y. July 3, 2013).

We assume the parties' familiarity with the facts and record of the underlying proceedings, which we reference only as necessary to explain our decision to affirm.

Crown Castle designs and installs fiber-optic based networks, known as Distributed Antenna Systems ("DAS").[2] Beginning on November 13, 2009, Crown Castle applied for twenty permits to install DAS equipment in the Town of Greenburgh, New York. After a protracted application process, the Town denied the application on July 24, 2012, ostensibly for two reasons: (1) Crown Castle failed to demonstrate a need for the proposed facilities as required by § 285-37(A)(9)(a) of the Town's Antenna Law "and consistent with the law of the Second Circuit," because the facilities were "either purely speculative or for the apparent benefit of a single 'client' of the Applicant"; and (2) Crown Castle failed to demonstrate that the proposed facilities were "of the 'minimum height and aesthetic intrusion,'" as required by § 285-37(A)(9)(b) of the Town's

---

[2] A DAS is made up of "nodes," each of which uses a small, low-power antenna, laser and amplifier equipment to convert radio frequency signals to optical signals and vice versa.

Antenna Law, because the equipment was either "purely speculative or . . . twice the size needed."

Crown Castle commenced this action below asserting violations of the Act. "The purpose of the [Act] was to encourage competition and facilitate the spread of new technologies." MetroPCS New York, LLC v. City of Mount Vernon, 739 F. Supp. 2d 409, 422 (S.D.N.Y. 2010); see H.R. Rep. No. 104-458, at 113 (1996)(Conf. Rep.); see also City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 115 (2005) (goal of § 332(c)(7) "was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers . . . , [through] imposi[tion of] specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities" (internal citations omitted)). Count III alleged a violation of 47 U.S.C. § 332(c)(7)(B)(iii), which provides that the denial of a request for permission to build a wireless facility must be "in writing and supported by substantial evidence contained in a written record."

In its July 3, 2013 opinion, the district court held that the Town's determination was not supported by "substantial

evidence" as required by Section 332(c)(7)(B)(iii). <u>Crown Castle</u>, 2013 WL 3357169, at *20. This appeal followed.[3]

We review a decision granting summary judgment <u>de novo</u>, after construing all the evidence and drawing all reasonable inferences in favor of the non-moving party. <u>Maraschiello v. City of Buffalo Police Dep't</u>, 709 F.3d 87, 92 (2d Cir. 2013). We affirm substantially for the reasons set forth by the district court in its thorough and well-reasoned opinion.

## A. Necessity

The Town concluded that Crown Castle had failed to demonstrate a need for the DAS facilities, as required by § 285-37(A)(9)(a) of the Town's Antenna Law, because the proposed facilities were "either purely speculative or for the apparent benefit of a single 'client' of the Applicant." We agree with the district court that this determination was not supported by substantial evidence.

First, the conclusion that the need was "purely speculative" was belied by the uncontradicted evidence presented

---

[3] On appeal, the Town moved to stay enforcement of the July 3, 2013, order. Crown Castle opposed the stay and requested an order directing the Town to issue all permits within five days. In an order dated October 21, 2013, this Court denied the motion to stay enforcement as well as the request for an order directing the Town to issue the permits within five days.

in the special permit proceedings.  That evidence showed that (1) Crown Castle was a public utility authorized by the New York Department of Public Service to operate as a facilities-based provider and reseller of telephone service, (2) Crown Castle did not have any existing sites in the Town, and (3) Crown Castle's client, MetroPCS, likewise had a gap in service in the area. The fact that Crown Castle had only a single client at the time that would benefit from the proposed facilities was not significant, as there still was a need for the proposed facilities.

Second, the Town based its decision on an incorrect interpretation of the law.  The Town suggested that this Court had definitively ruled in Sprint Spectrum L.P. v. Willoth, 176 F.3d 630 (2d Cir. 1999), that a service gap is viewed from the perspective of "users in the given area."  As this Court later made clear, however, the question of which perspective to use in determining a service gap -- that of the service provider or that of users in the area -- is unsettled.  Omnipoint Commc'ns, Inc. v. City of White Plains, 430 F.3d 529, 535 n.3 (2d Cir. 2005).  Thus, the district court was correct in finding that the Town's determination was "premised on an error of law," and that

therefore its determination was "not supported by substantial evidence."  <u>Crown Castle</u>, 2013 WL 3357169, at *18.[4]

**B.   Aesthetic Intrusion**

The Town's determination regarding aesthetic intrusion is also not supported by substantial evidence.  In its determination, the Town's stated objection was that the proposed installation was not minimally intrusive.  While recognizing that "aesthetics can be a valid ground for local zoning decisions," the district court found that "the evidence in the Board's record does not support [the finding] that the size of Plaintiff's proposed shroud box correlates with aesthetic intrusion."  <u>Id.</u> at *20 (internal citations omitted).  We agree with the district court that the intrusion was <u>de minimus</u> -- the antenna added less than eight feet to <u>existing</u> thirty-foot

---

[4]    We need not decide which perspective is correct, but merely note that Town's suggestion that the law is clear is wrong. Moreover, <u>Willoth</u> and <u>Omnipoint</u> were decided without the benefit of the Federal Communications Commission's subsequent ruling that state or local authorities cannot deny an application "solely because 'one or more carriers serve a given geographic market'" and that doing so unlawfully "'prohibits or ha[s] the effect of prohibiting the provision of personal wireless services,' within the meaning of Section 332(c)(7)(B)(i)(II)." <u>See</u> Petition for Declaratory Ruling (Shot Clock Order), 24 F.C.C. Rcd. 13994, 14016 (2009), <u>petition for review denied</u>, <u>City of Arlington, Tex. v. FCC</u>, 668 F.3d 229 (5th Cir. 2012), <u>aff'd</u>, 133 S. Ct. 1863 (2013).  While there may be room in the process to consider the needs of the local community, the state and local authorities cannot ignore the needs of service providers.

- 7 -

utility poles, and photographs in the record show that Crown Castle's installations would be no more intrusive than existing installations of other carriers. In contrast, a more typical cell tower is approximately 100 feet tall. Id. Moreover, the Town did not explicitly find that Crown Castle's proposed shroud boxes would constitute an aesthetic intrusion; it merely speculated that the boxes could be smaller, without proof in the record that this was so. Id. Moreover, even assuming a smaller box were available, the aesthetic intrusion created by the proposed box was still de minimus. The Town's denial was, therefore, not supported by substantial evidence.

We have considered the Town's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK