UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Vertex Tower Assets, LLC

        v.

Town of Wakefield,
New Hampshire, et al.

Civil No. 22-cv-180-LM
Opinion No. 2025 DNH 039 P

## O R D E R

Plaintiff Vertex Tower Assets, LLC ("Vertex") brings this suit against the Town of Wakefield, New Hampshire, the Wakefield Planning Board (the "Planning Board"), and the Wakefield Zoning Board of Adjustment (the "ZBA") for violations of the Telecommunications Act of 1996, 47 U.S.C. § 251 et seq. Vertex alleges that defendants failed to timely decide Vertex's permitting applications for two wireless service facilities, and that defendants' actions amount to an effective prohibition of wireless service. Vertex also alleges that a provision of the Wakefield zoning code constitutes an effective prohibition of wireless service on its face. Presently before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that all of Vertex's claims are moot. Doc. no. 18. Vertex objects in part. Doc. no. 19. For the following reasons, defendants' motion to dismiss (doc. no. 18) is granted.

## STANDARD OF REVIEW

"A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity, and, of

course, subject matter jurisdiction." Perez v. P.R. Nat'l Guard, 951 F. Supp. 2d 279, 287 (1st Cir. 2013) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001)).

On a motion to dismiss that challenges the sufficiency of the undisputed facts offered to establish jurisdiction, such as this one, the undisputed facts must plausibly demonstrate that the plaintiff's claim is justiciable. See Hochendoner v. Genzyme Corp., 823 F.3d 724, 730-31 (1st Cir. 2016) (applying the plausibility standard to jurisdictional challenges prior to taking of discovery); Valentin, 254 F.3d at 363 (explaining that the court may consider, on a motion to dismiss under Rule 12(b)(1), undisputed facts submitted by either party in addition to facts alleged in the complaint); see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992) (same). "[T]he burden of establishing mootness rests squarely on the party raising it." Mangual v. Rotger-Sabat, 317 F.3d 45, 61 (1st Cir. 2003).

## BACKGROUND[1]

### I.  Vertex's Applications

Vertex is a Massachusetts-based company that builds facilities for telecommunication and wireless services, such as cell phone towers. Vertex constructs the wireless service facilities and contracts with wireless providers, which then install their own radio antennas on the facilities. These antennas

---

[1] The following facts are not in dispute and are thus appropriate for consideration on this motion to dismiss. See Valentin, 254 F.3d at 363; Herbert, 974 F.2d at 197. The court's resolution of this motion turns on questions of law, not on the resolution of any factual disputes.

2

provide wireless service to customers by sending and receiving their devices' signals from the wireless service facilities.

Each antenna, referred to as a cell site, delivers wireless coverage to a limited geographic area. Cell sites need to produce an overlapping grid of wireless service to avoid gaps in coverage. When there is a gap, service fluctuates, and customers may drop cell phone calls and lose connections. To decide where to build new wireless facilities, Vertex employs radio frequency engineers to map the wireless coverage of existing cell sites and determine where additional cellular service is needed.

Vertex presently has a lease agreement to build wireless service facilities on two properties in Wakefield, New Hampshire: one is known as "Province Line" and the other as "Savannahwood." At each location, Vertex seeks to install a single pole (a monopole) that stands 126 feet above ground level. Each monopole could accommodate antennas and equipment for three telecommunication providers. The two proposed facilities would be more than four miles apart.

The Town of Wakefield delegates authority to the Planning Board and the ZBA to review and decide zoning permits and applications. Vertex submitted its two site plans to the Planning Board for approval. In support of its applications, Vertex provided a variety of materials, including an affidavit of a radio frequency engineer. In his affidavit, the engineer identified two significant coverage gaps, each of which would be filled by constructing wireless facilities at the Province Line and Savannahwood properties.

Between the two properties is a third property on which a cell phone tower (the "Whittier Tower") was approved for construction years before Vertex submitted its site plans for approval. The Whittier Tower is owned by Whittier Communications, Inc. ("Whittier"), a direct competitor of Vertex. The Whittier Tower sits approximately 2.25 miles away from the proposed Province Line Facility and 1.9 miles away from the proposed Savannahwood Facility. The Whittier Tower, however, was not yet constructed when Vertex submitted its applications to the Planning Board.

II.     The Initial Planning Board Decision

Between October 2021 and April 2022, the Planning Board held several public meetings on Vertex's applications. During the hearings, the Planning Board required Vertex to treat the Whittier Tower as if it had already been constructed, because, according to the Planning Board, it would have already been constructed but for delays caused by the COVID-19 pandemic. Vertex produced maps of radio frequency coverage which demonstrated that the Whittier Tower, even once it was constructed, would not cover the two gaps the radio frequency engineer identified.

On April 21, 2022, the Planning Board voted to deny Vertex's applications. The Planning Board explained its decision in writing on April 27, 2022, citing Article 24, sections E.5 and F of the Wakefield Zoning Ordinance. Section E.5, known as the "Four Mile Restriction," requires applicants proposing a new wireless facility to provide "written evidence demonstrating that no existing facility within four miles of the proposed personal wire service facility can accommodate the

4

applicant's needs." Wakefield, N.H., Zoning Ordinances art. 24, § E.5 (2022). Section F states, in relevant part: "When applying for construction of a new tower, mast, monopole, or similar structure, the applicant shall have the burden of proving that there are no existing structures available and suitable to locate its personal wireless service facility and/or transmit or receive radio signals." Id. art. 24, § F.

In its decision, the Planning Board stated that Vertex failed to demonstrate a coverage need under the Four Mile Restriction because the Whittier Tower was under construction. The Planning Board stated that, but for the COVID-19 pandemic, the Whittier Tower would have already been built. The Planning Board further found that Vertex failed to meet its burden of proving that there were no existing structures available and suitable to locate the facility under section F.

III.     The Administrative Appeals and the "Whittier Suit"

Vertex filed its initial complaint in the instant case within 30 days of the Planning Board's decisions and simultaneously filed an administrative appeal to the ZBA. The ZBA reversed the Planning Board's decisions and remanded for further consideration. Following the ZBA's reversal, at a hearing on October 6, 2022, the Planning Board approved Vertex's plans for both the Province Line and Savannahwood properties.

Whittier then appealed the Planning Board's approvals to the ZBA. Whittier also simultaneously appealed the Planning Board's approvals to the New Hampshire Superior Court. The Superior Court actions were consolidated, and Vertex was joined as an intervenor. Vertex, the Town, and the Planning Board then

5

jointly moved to dismiss the consolidated appeal, arguing that Whittier lacked standing. The Superior Court denied that joint motion in an order signed July 17, 2023. Relevant to Vertex's argument on this motion, the Superior Court found that the Four Mile Restriction gave Whittier a direct interest in Vertex's applications, and thereby conferred upon Whittier standing to pursue its appeals. Following that order, the Superior Court proceedings were stayed pending a decision from the ZBA. On September 14, 2023, the ZBA held a hearing on Whittier's appeal. The ZBA denied Whittier's appeal five days later. Whittier, however, petitioned the ZBA for rehearing. On November 9, 2023, the ZBA granted Whittier's request to rehear the appeal. The ZBA held its rehearing on Whittier's appeal on January 11, 2024. After the hearing, the ZBA again voted to deny Whittier's appeal.

Following the ZBA's denial of Whittier's reheard appeal, Whittier's actions before the Superior Court were consolidated,[2] and the stay of that consolidated case was lifted. The Superior Court held a merits hearing on Whittier's consolidated appeal (the "Whittier Suit") on May 6, 2024. In an order dated July 30, 2024, the Superior Court affirmed the approval of Vertex's plans and dismissed the Whittier Suit. On August 12, 2024, Whittier filed a motion to reconsider the Superior Court's dismissal of its consolidated appeal. The Superior Court subsequently denied Whittier's motion to reconsider. On November 27, 2024, Whittier appealed the

---

[2] The consolidated actions were: (1) Whittier's direct appeal of the ZBA approval for the Province Line Facility, (2) Whittier's direct appeal of the ZBA approval for the Savannahwood Facility, and (3) Whittier's appeal of the ZBA's denial of its administrative appeal.

dismissal of the Whittier Suit to the New Hampshire Supreme Court. The appeal before the New Hampshire Supreme Court is currently pending.

IV.    Vertex's Claims

Vertex brings eight claims in its amended complaint, alleging that defendants' conduct violated the Telecommunications Act. The claims are as follows:

- Count I alleges that the Planning Board's denial of the Province Line Facility application constitutes an effective prohibition of service, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

- Count II alleges that the Planning Board's decision as to the Province Line Facility is not supported by substantial evidence in a written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

- Count III alleges that the Planning Board's denial of the Savannahwood Facility application constitutes an effective prohibition of service, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

- Count IV alleges that the Planning Board's decision as to the Savannahwood Facility is not supported by substantial evidence in a written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

- Count V alleges that the Planning Board and the ZBA failed to act on the Province Line Facility application within a reasonable period of time, in violation of 47 U.S.C. § 332(c)(7)(B)(ii) and the "Shot Clock Ruling" (explained infra).

- Count VI alleges that the Planning Board and the ZBA failed to act on the Savannahwood Facility application within a reasonable period of time, in violation of 47 U.S.C. § 332(c)(7)(B)(ii) and the "Shot Clock Ruling" (explained infra).

- Count VII alleges that the Four Mile Restriction, as adopted and as applied to the Province Line Facility,

7

constitutes an effective prohibition of service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

- Count VIII alleges that the Four Mile Restriction, as adopted and as applied to the Savannahwood Facility, constitutes an effective prohibition of service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

## DISCUSSION

Defendants argue that all of Vertex's claims are moot because the Planning Board and the ZBA have now issued final decisions on Vertex's applications, and Vertex has thus received the relief to which it would be entitled if it were successful in this action. Vertex concedes that Counts I-IV should be dismissed as moot but argues that live controversies exist regarding the remaining claims.[3] Because the parties agree that Counts I-IV are moot, the court begins with Vertex's "Shot Clock" claims under Counts V and VI.

I.     The Telecommunications Act and the Shot Clock Ruling

The Telecommunications Act "imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification" of wireless service facilities. City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115 (2005). Section 332(c)(7) of the Act requires local government entities to "act on any request for authorization" to build a wireless service facility

---

[3] Vertex requests that the court limit its dismissal of Counts I-IV to the legal claims, rather than dismissing the factual allegations in those claims. It appears that Vertex is concerned that the factual allegations in Counts I-IV, which are incorporated by reference in the remaining counts, will not be considered with respect to the remaining claims. The court will consider the factual allegations that are incorporated by reference.

8

"within a reasonable period of time after the request is duly filed." 47 U.S.C. § 332(c)(7)(B)(ii). An individual or entity "adversely affected by any final action or failure to act by a State or local government . . . may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." Id. § 332(c)(7)(B)(v).

In 2009, in what is known as the "Shot Clock Ruling," the Federal Communications Commission clarified that a "reasonable period of time" is, presumptively, 90 days for collocation applications and 150 days for all other applications.[4] In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(b), 24 F.C.C. Rcd. 13994, 14021 ¶ 71 (2009) ("Shot Clock Ruling"). Because Vertex's applications concern the construction of new towers, rather than a collocation, the 150-day period applies in this case. The deadlines may be extended with the consent of the applicant, and "the State or local authority will have the opportunity, in any given case that comes before a court, to rebut the presumption that the established timeframes are reasonable." Id. at 14010 ¶ 42. After the Shot Clock period expires, the 30-day window to bring a claim under section 332(c)(7)(B)(v) begins.

II.    Vertex's Shot Clock Claims Are Moot

In support of Counts V and VI, Vertex alleges that the Planning Board and the ZBA failed to render final decisions on its applications within the 150-day

_____

[4] A collocation occurs when an antenna is added to an existing wireless tower or other structure. New Cingular Wireless PCS, LLC v. Town of Stoddard, 853 F. Supp. 2d 198, 203 (D.N.H. 2012).

period set forth in the Shot Clock Ruling. Defendants do not dispute that their decisions came after the 150-day window but argue that Vertex's Shot Clock claims are nevertheless moot because Vertex has now received final approval of its applications. Defendants are correct.

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. "To satisfy the case or controversy criterion, the party alleging the existence of jurisdiction . . . must possess a personal stake in the outcome of the litigation." Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006). "The doctrine of standing measures whether a plaintiff has satisfied the 'personal stake' requirement at the commencement of an action." Id. "Thereafter, the doctrine of mootness measures whether the plaintiff's interest remains sufficient to justify continuing federal jurisdiction." Id.

To demonstrate standing at the commencement of this action, Vertex "[bore] the burden of demonstrating that (i) [it had] suffered an actual or threatened injury in fact, which [was] (ii) fairly traceable to the [challenged statute or conduct], and (iii) could be redressed by a favorable decision." Id. (citation omitted). Even where a plaintiff can establish standing at the outset of the case, "a federal court is duty bound to dismiss the claim as moot if subsequent events unfold in a manner" such that the plaintiff can no longer make one or more of these necessary showings. Id. at 100.

The redressability element requires that "a favorable resolution of the claim would likely redress the professed injury." Dantzler, Inc. v. Empresas Berríos

10

Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020) (quoting Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012)). While a plaintiff "need not definitively demonstrate that a victory would completely remedy the harm" to satisfy this requirement, Katz, 672 F.3d at 72 (quoting Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 318 (1st Cir. 2012)), "it cannot be merely speculative that, if a court grants the requested relief, the injury will be redressed." Dantzler, 958 F.3d at 47.

Vertex's complaint alleges that the Planning Board and the ZBA exceeded the 150-day period of presumptive reasonableness under the Shot Clock Ruling and seeks as relief an order mandating that the Town approve its applications. Since Vertex filed its amended complaint, the Planning board has issued final approvals for both of its site applications and the ZBA has affirmed those approvals. Thus, Vertex has obtained the relief it sought, and there is no further relief for the court to offer. Where, as here, "an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief . . . to a prevailing party, the [action] must be dismissed." Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 192 (1st Cir. 2022) (alterations in original) (quoting Gulf of Me. Fisherman's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002)). Indeed, other courts have dismissed Shot Clock claims as moot where, as here, the applications were resolved during the pendency of the federal action, despite the fact that those resolutions came after the applicable deadlines for presumptive reasonableness. See e.g. Crown Castle NG E. Inc. v. Town of Greenburgh, No. 12-CV-6157 (CS), 2013 WL 3357169, at *17

11

(S.D.N.Y. July 3, 2013), aff'd, 552 F. App'x 47 (2d Cir. 2014); Omnipoint Commc'ns, Inc. v. Vill. of Tarrytown Plan. Bd., 302 F. Supp. 2d 205, 214 n.7 (S.D.N.Y. 2004); see also TowerNorth Dev., LLC v. City of Geneva, No. 22 C 4151, 2023 WL 6388257, at *6 (N.D. Ill. Sept. 30, 2023) ("[I]n a slew of cases courts have found . . . that the (late) issuance of a written decision mooted plaintiffs' claims under § 332(c)(7)(B)(ii).").

Vertex argues that the claims are not moot because, while Vertex has received approval of its site applications, it has not yet received the building permits necessary to commence construction. Vertex is incorrect, and its citation to Town of Stoddard as support for this argument is unavailing. In that case, the court held that a town had not "acted on" an application until that application was completely resolved, i.e. until the rehearing process concluded and the decision was final. 853 F. Supp. 2d at 203-04. Here, however, defendants have "acted on" Vertex's site applications in accordance with the final resolution requirement articulated in Town of Stoddard: the Planning Board has issued final approvals for both applications, and the ZBA appeal and rehearing process has concluded. The fact that the Town has not issued building permits is not relevant to Vertex's Shot Clock claims, which relate to Vertex's applications for site approvals. The Telecommunications Act requires the Town to "act on" applications "within a reasonable period of time," but Vertex has not alleged that it has filed applications for building permits. 47 U.S.C. § 332(c)(7)(B)(ii). Thus, there is no pending

application that could form the basis for a Shot Clock claim, and Vertex's Shot Clock claims based on the site applications (which defendants have resolved), are moot.[5]

III.     Vertex's Four Mile Restriction Claims (Counts VII and VIII)

Counts VII and VIII of Vertex's complaint challenge the Four Mile Restriction, alleging that the Restriction, both as-applied and on its face, constitutes an effective prohibition of wireless service. Vertex seeks a declaratory judgment that the Four Mile Restriction violates the Telecommunications Act and is therefore invalid.

Claims for declaratory judgment can raise Article III justiciability issues where the plaintiff lacks a sufficiently concrete stake in the legal declaration sought. Such claims can invoke the specter of constitutionally impermissible advisory opinions. See generally Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227, 239-41 (1937). The test for justiciability of a declaratory judgment claim is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co.

---

[5] Vertex also contends that Counts V and VI are not moot because, regardless of the approvals it has received, the delay in deciding the applications amounts to a denial and an effective prohibition of service. But this argument does not address the fundamental reason that the delay-based claims are now moot, which is that, despite any delay, Vertex has now received the relief that it sought—approval of the site applications. Whether the delay-based claims are grounded in § 332(c)(7)(B)(ii) (reasonable time) or § 332 (c)(7)(B)(i)(II) (effective prohibition), they are moot because final approvals have been issued, and there is no further relief for the Court to grant. Harris, 43 F.4th at 192.

13

v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). These justiciability considerations governing declaratory judgments serve, among other purposes, to ensure that legal questions are presented to the court in cases that facilitate the best possible judicial decision-making. See Flast v. Cohen, 392 U.S. 83, 96-97 (1968) ("[T]he rule against advisory opinions also recognizes that such suits often are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests." (quotation omitted)).

Defendants argue that the Four Mile Restriction claims are moot, and any decision on the merits of these claims would be advisory in nature. Vertex responds that these claims are not moot because it is suffering an ongoing harm: Vertex cannot begin construction on its now-approved tower projects due to a pending state lawsuit, and that lawsuit is premised in part on the Four Mile Restriction. The court first considers the as-applied challenge, and then the facial challenge.

A.    Vertex's As-Applied Challenges Are Moot

In support of its as-applied challenges, Vertex argues that the denials of its applications on the basis of the Four Mile Restriction constitute effective denials of service. But Vertex's injury—the denial of its applications—has been abated by the subsequent approval of those applications by the Planning Board, which has been made final by the conclusion of the ZBA review process. Vertex is thus no longer suffering any injury traceable to the application of the Four Mile Restriction by the

14

defendants in this action. See Ramirez, 438 F.3d at 100. For this reason, Vertex's as-applied challenges are moot.

        B.       <u>Vertex's Facial Challenges Are Moot</u>

Vertex also claims that the Four Mile Restriction is invalid on its face and argues that the Restriction could constitute an effective prohibition because it is still in effect. Vertex further argues that this facial challenge is not moot because, notwithstanding the approval of its applications, it is suffering an ongoing injury traceable to the Restriction: Vertex is unable to proceed with construction of its planned towers due to a pending lawsuit in state court, and the plaintiff's standing in that case stems from the Four Mile Restriction. While this new injury may indeed by traceable to the Four Mile Restriction, it nevertheless cannot form the basis for ongoing standing in this action.

First, defendants argue that, following the approval of Vertex's applications, Vertex is no longer injured by an adverse decision under the Four Mile Restriction. In support of this argument, defendants point to the Planning Board's express finding that Vertex had "satisfied the applicable provisions of the Town's zoning ordinance relative to the construction of new cell towers at Article 24," which provisions include the Four Mile Restriction. Doc. no. 18-5 at 1, 3. In opposition, Vertex argues that its facial challenge to the Four Mile Restriction should be allowed to proceed because, though they are no longer subject to an adverse decision under it, the Restriction remains in effect.

15

Vertex is incorrect: the fact that the Restriction remains in effect does not save its claim. Vertex's citation to Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) does not answer defendants' argument. The relevant holding in that case is that a facial challenge was mooted by repeal of the challenged law. But while repeal of the challenged law can indeed moot a facial challenge, Baker does not hold that repeal is required for a facial challenge to become moot. Indeed, the reversal of an unfavorable decision based on the challenged law can also moot a facial challenge by undermining the injury-in-fact upon which standing was based at the outset of the suit. See, e.g., Severino v. Rovella, No. 3:22-cv-01529 (VAB), 2024 WL 147997 at *5 (D. Conn. Jan. 12, 2024) (finding that facial challenge to state pistol permitting statute was mooted by grant of pistol permit to plaintiff during pendency of federal action). Just as in Severino, the approval of Vertex's applications has eliminated the injury upon which its standing to pursue its facial challenge was based—denial of its applications. Because this injury has been abated, Vertex's facial challenge is moot. Ramirez, 438 F.3d at 100.

Vertex, however, points to a new injury that it argues is traceable to the Four Mile Restriction and thus supports ongoing standing for its facial challenge: it cannot build its planned towers due to the ongoing Whittier Suit. Vertex argues that this injury is traceable to the Four Mile Restriction because the state court ruled that Whittier has standing to appeal Vertex's approvals because of the Four Mile Restriction.

Even accepting, for purposes of argument, that Vertex's inability to proceed with construction can be traced through the Whittier Suit to the Four Mile Restriction, this injury is not redressable by any relief this court can order. Vertex seeks a declaratory judgment from this Court that the Four Mile Restriction constitutes an effective denial of service and is facially invalid under the Telecommunications Act. "[T]he redressability element of standing requires that . . . 'a favorable resolution of the claim would likely redress the professed injury.'" Dantzler, 958 F.3d at 47 (quoting Katz, 672 F.3d at 72). And "it cannot be merely speculative that, if a court grants the requested relief, the injury will be redressed." Dantzler, 958 F.3d at 47. Even if this court were to grant Vertex's requested relief and declare the Four Mile Restriction unlawful, that judgment would not halt the ongoing state action or remove it as an obstacle to Vertex's tower construction projects. At most, Vertex could marshal such a declaration as persuasive authority in in any future argument in the state courts that Whittier lacks standing to appeal Vertex's approvals. Where redress of a plaintiff's injury would require discretionary action by a third party even if the federal court grants the requested relief, the redressability requirement is not met. See ASARCO Inc. v. Kadish, 490 U.S. 605, 615 (1989).

While the redressability issue is decisive, this result makes sense in light of fundamental standing principles. Specifically, without a redressable injury, Vertex lacks the kind of personal stake in the action necessary to ensure that the court's consideration of the facial challenge would be carried out within a sufficiently

17

informative factual context. The redressability requirement "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of judicial action." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). Strict adherence to the standing requirements is necessary to "ensure that [the court's decisions] will have the benefit of adversary presentation and a full development of the relevant facts." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 542 (1986). See also Flast, 392 U.S. 96-97. Without a redressable injury under the Four Mile Restriction, Vertex's claim cannot provide the Court with "a full development of the relevant facts" that would be necessary to resolve the facial challenge on its merits. Bender, 475 U.S. at 542.

Finally, Bender highlights another way this result coheres with standing principles: injury stemming from the Whittier Suit does not establish the necessary conditions for an "adversary presentation" of the issues relevant to the facial challenge. Id. at 542. As redress, Vertex seeks an order from this Court that would purportedly circumvent the state court's ruling that the Four Mile Restriction gives Whittier standing to appeal Vertex's site approvals. But Whittier is not a party to this action, and the Planning Board agrees with Vertex that the Whittier Suit should have been dismissed for lack of standing. See doc. no. 22-2 (Carroll County Superior Court order denying motion to dismiss Whittier Suit for lack of standing brought jointly by Vertex and the Planning Board). The fact that the parties to this

action ultimately agree on the question of whether the Whittier Suit should proceed, and the fact that Whittier is not present in this suit to advocate its own interest in the maintenance of if its appeal, reflect the fact that Vertex's purported injury does not confer the necessary personal stake in this action to ensure an "adversary presentation" of the issues relevant to the facial statutory challenge. Bender, 475 U.S. at 542.

For these reasons, Vertex's injury from the Whittier Suit does not confer ongoing standing to bring a facial challenge to the Four Mile Restriction, and the facial challenge is therefore moot.

## CONCLUSION

Defendants' motion to dismiss (doc. no. 18) is granted. The clerk of court is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 24, 2025

cc:     Counsel of Record

19